GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, SBN 163581
    bwagner@gibsondunn.com
KEVIN J. WHITE, SBN 314159
    kwhite@gibsondunn.com
HAZEL VERDIN, SBN 333795
    hverdin@gibsondunn.com
1881 Page Mill Road
Palo Alto, California  94304-1211
Telephone:    650.849.5300
Facsimile:    650.849.5333

GIBSON, DUNN & CRUTCHER LLP
WINSTON Y. CHAN, SBN 214884
    wchan@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California  94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Plaintiffs*
*Anbang Group Holdings Co. Limited, AB Stable*
*IX LLC, and AB Stable VIII LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANBANG GROUP HOLDINGS CO. LIMITED; AB STABLE IX LLC; and AB STABLE VIII LLC, <br><br> Plaintiffs, <br><br> v. <br><br> HAIBIN ZHOU a/k/a Hai Bin Zhou a/k/a Andrew Zhou a/k/a Andy Bang, a/k/a Joe Martin; DANIIL A. BELITSKIY; DAVID C. TRAUB; YAN ZHAO; LAW OFFICE OF NING YE, ESQ.; WORLD AWARD FOUNDATION INC.; AMER GROUP LLC; AN BANG GROUP LLC; AB STABLE GROUP LLC; ANDY BANG LLC; SHC GROUP LLC; and SHR GROUP LLC, <br><br> Defendants. | CASE NO. 3:23-cv-00998 <br><br> **COMPLAINT FOR DAMAGES FOR VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962** <br><br><br><br> **DEMAND FOR JURY TRIAL** |

Gibson, Dunn & Crutcher LLP

**TABLE OF CONTENTS**

**Page**

NATURE OF THE ACTION ................................................................................................ 1

THE PARTIES ..................................................................................................................... 5

    A.    Plaintiffs ........................................................................................................ 5

    B.    Defendants .................................................................................................... 6

        1.    Individual Defendants ..................................................................... 6

        2.    Entity Defendants ............................................................................ 8

        3.    Other Entities ................................................................................ 12

    C.    Non-Party Co-Conspirators ........................................................................ 13

JURISDICTION AND VENUE ......................................................................................... 15

DIVISIONAL ASSIGNMENT .......................................................................................... 16

FACTUAL ALLEGATIONS .............................................................................................. 16

    I.    OVERVIEW OF THE RICO ENTERPRISE .................................................... 17

    II.    RACKETEERING ACTIVITY ........................................................................... 19

        A.    The Andy Bang Enterprise Purports to Transfer Title to Six of Plaintiffs' Hotel Properties Via False Grant Deeds ...................................... 19

            1.    Zhou Creates or Renames Sham Entities For Scheme—Start of 'Andy Bang' Alias ......................................................................... 19

            2.    False Deed Transfers for the Westin San Francisco and the Ritz-Carlton Half Moon Bay ....................................................................... 20

            3.    False Deed Transfers for the Four Seasons Silicon Valley, the Ritz-Carlton Laguna Niguel, and the Montage Laguna Beach ........... 22

            4.    Further False Deed Transfers For the Ritz-Carlton Laguna Niguel and the Montage Laguna Beach ............................................ 23

            5.    False Deed Transfer for the Loews Santa Monica .............................. 23

            6.    Anbang's Subsidiaries are Forced to Reverse the Fraudulent Transfers Via Quiet Title Actions In Four Counties ......................... 23

        B.    The Sham "DRAA" Agreement .................................................................. 25

        C.    The Sham Arbitration Awards ..................................................................... 30

            1.    The Sham Mid-July 2019 Filing .................................................... 30

            2.    The Making of Fake Arbitration Awards ........................................ 31

            3.    The Sham August 2019 Delaware Arbitration Petition ...................... 34

i

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**
(continued)

Page

4. Efforts To Persuade the Attorney to File the Fraudulent Arbitration Awards In Delaware ........................................................ 36

5. The September 2019 Sham 'Default Judgment' ................................ 38

6. Defendants Attempt to Enforce the Sham Preliminary Awards ......... 40

7. Defendants Attempt To Enforce The Sham Preliminary Awards Via A Sister State Judgment In California Superior Court ................ 41

8. Defendants Create and Attempt to Enforce the Sham 'Final Awards' ............................................................................................ 42

9. Anbang's Subsidiaries Successfully Void the Fraudulent Filings and the Fraud Scheme is Further Revealed ......................................... 45

A) Alameda County Sister State Judgment .................................. 46

B) The Delaware Arbitration Awards ........................................... 46

C) Defendants Attempt to Prolong The Litigation ....................... 48

D. The Failed Mirae Transaction ......................................................................... 50

E. The Sham DC Litigation ................................................................................. 51

F. The Sham *Lis Pendens* Filings ........................................................................ 54

1. *Lis Pendens* Notice Filing in District Of Columbia ............................ 54

2. *Lis Pendens* Filing in New York ........................................................ 55

III. SUMMARY OF RICO ALLEGATIONS AND HARM TO PLAINTIFFS ............. 57

A. RICO Predicate Acts ....................................................................................... 57

1. Mail Fraud in Violation Of 18 U.S.C. § 1341 ................................... 57

2. Wire Fraud in Violation Of 18 U.S.C. § 1343 .................................. 59

3. Attempted Extortion in Violation of the Hobbs Act, 18 U.S.C. § 1951 ................................................................................................ 62

4. Attempted Extortion in Violation of California Penal Code § 524 ................................................................................................... 62

B. Harm To Plaintiffs ........................................................................................... 63

FIRST CLAIM FOR RELIEF ................................................................................................ 64

SECOND CLAIM FOR RELIEF ........................................................................................... 66

PRAYER FOR RELIEF ......................................................................................................... 67

Gibson, Dunn &
Crutcher LLP

Plaintiffs Anbang Group Holdings Co. Limited, AB Stable IX LLC, and AB Stable VIII LLC (collectively, "Plaintiffs"), by and through their counsel of record, hereby bring this complaint against Defendants Haibin Zhou ("Zhou"); Daniil A. Belitskiy ("Belitskiy"); David C. Traub ("Traub"); Yan Zhao; the Law Office of Ning Ye, Esq. ("Law Office of Ning Ye"); World Award Foundation Inc. ("World Award Foundation"); Amer Group LLC ("Amer Group"); An Bang Group LLC ("An Bang Group"); AB Stable Group LLC ("AB Stable Group"); Andy Bang LLC; SHC Group LLC ("SHC Group"); and SHR Group LLC ("SHR Group") (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      Since at least 2018 and on an ongoing basis, several individuals and shell entities, working together in a common enterprise under the leadership of Defendant Haibin Zhou, have falsified contracts, property records and legal judgments in an attempt to fraudulently claim ownership over billions of dollars in real estate owned by Plaintiffs.  Multiple courts in three states and the District of Columbia have recognized this for what it is:  "fraud" and "criminal activity."  The San Francisco District Attorney's Office also recently brought criminal charges against one of the Defendants for his role in this scheme.  But despite judicial intervention, the fraud enterprise continues to this day, with new tactics and phases, causing ongoing harm to Plaintiffs.

2.      At the center of this fraud enterprise is Defendant Haibin Zhou, a serial harasser who has attempted to extract payments from other large companies through bad faith cybersquatting and trademark trolling.  Zhou has used multiple aliases, and in or around 2018 he began using the name "Andy Bang," in furtherance of a fraud scheme whereby he falsely claimed to be a true owner of Anbang Insurance Group Co., Ltd. ("Anbang" or "Anbang Insurance Group").  At that time, Anbang was front and center in the news media and Zhou clearly saw this as a golden opportunity: in February 2018, Anbang was taken over by the China Insurance Regulatory Commission, after its former CEO was arrested for economic crimes, and Anbang sought to deleverage its balance sheet by selling off various assets outside of China.

3.      After Zhou invented Andy Bang, he created at least six Delaware shell companies to facilitate the fraud.  Some of these entities bore names similar to Anbang (like An Bang Group LLC or Andy Bang LLC) and others followed the naming conventions of Anbang affiliates that held various

overseas properties: e.g., AB Stable Group LLC (fraudulent) versus AB Stable LLC (Anbang affiliate, owner of the Waldorf Astoria Hotel in New York); SHC Group LLC (fraudulent) versus SHC Half Moon Bay, LLC (Anbang affiliate, owner of the Ritz-Carlton Half Moon Bay in California); and SHR Group LLC (fraudulent) versus SHR Essex House, LLC (Anbang affiliate, owner of the JW Marriott Essex House Hotel in New York).  One of these fraudulent entities (Amer Group LLC) may have been a vestige from a previous scheme (as Chinese athletic apparel producer Anta Sports Products owns an entity called Amer Sports, whose portfolio includes the clothing brand Arc'teryx).  Then there was World Award Foundation Inc., which purports to have given awards to Pope John Paul II and the Pet Shop Boys (among others) for their "wide range of expertise."  According to documents filed with the Delaware Secretary of State, the directors of World Award Foundation Inc. purportedly include Bob Dylan.  None of these fraudulent entities sells any legitimate products or services or has any known business operations.

4.     Zhou recruited others to assist in his scheme, including Defendants Daniil A. Belitskiy and David C. Traub, fellow residents of the San Francisco Bay area.  Belitskiy has a criminal history, while Traub holds himself out as, among other things, a consultant and movie producer.

5.     Between May and December 2018, Defendants Zhou and Belitskiy filed fraudulent grant deeds with four County Clerks' offices in California that purported to transfer ownership over six of Plaintiffs' hotel properties worth several billion dollars to sham entities owned and controlled by Zhou.  Using shell entities that mimicked the names of the actual subsidiaries of Plaintiffs, which are the true owners of the hotels, the deeds were deceptively drafted to appear to be routine adjustments of title among affiliated entities.  When Plaintiffs learned of the fraudulent deeds in 2019 and initiated quiet title actions in all four counties, neither Zhou, Belitskiy nor any of their shell companies ever appeared in court to defend the attempted fraudulent transfers.  Belitskiy was recently charged with felony offenses in connection with these fraudulent deed filings.

6.     With the fraudulent deed scheme exposed, Zhou came up with a new scheme to attempt to disrupt Plaintiffs' efforts to sell its subsidiary Strategic Hotels & Resorts LLC and that entity's portfolio of luxury hotels.  Zhou hired lawyer Steven Nielsen, a patent attorney who runs his own firm (Nielsen Patents) in Larkspur, California.  Nielsen helped Zhou draft bogus arbitration awards that

Gibson, Dunn &
Crutcher LLP

purported to award nearly one *trillion* dollars to Zhou's companies, including the luxury hotels that Plaintiffs were attempting to sell.  Zhou then used Attorney Nielsen to gain access to other lawyers in Delaware.  The first of these lawyers was a sole practitioner in Delaware whom Attorney Nielsen, Defendant Zhou (sometimes using the alias "Joe Martin") and Defendant Traub directed to file an arbitration petition verified by "Andy Bang" and bearing the signature of a San Francisco notary whose notary license had been revoked months before the verification was notarized.  That Delaware solo attorney became increasingly suspicious as Zhou and his associates urged him to obtain a court stamp on a document purporting to be a final, non-appealable default judgment from an arbitration (which contained no details regarding the substance of any award).  Faced with resistance from their own lawyer in Delaware, Defendant Zhou and his associates replaced that attorney with a new attorney, Stamatios Stamoulis, from a small patent firm in Delaware.

7.     At the behest of Zhou, attorney Nielsen then directed attorney Stamoulis to take steps to further the fraudulent scheme.  Attorney Stamoulis sought and obtained six Delaware court judgments, one of which was used to obtain a sister-state judgment in Alameda County, California.  All of these judgments were predicated on the fraudulent arbitration awards totaling nearly one *trillion* dollars.  When Plaintiffs learned of these fraudulent arbitration awards and sought a temporary restraining order in the Delaware Court of Chancery, both Delaware attorneys—the sole practitioner and Stamoulis—quickly moved to withdraw, and the Delaware court judgments and California sister-state judgment were ultimately all vacated on the grounds that they had been obtained by fraud.

8.     In the course of attempting to appeal the rulings dismissing the Delaware judgments, Defendant Zhou recruited Defendant Yan Zhao, who has purported to be a shareholder in three of the shell entities controlled by Zhou, to appear as a party to the Delaware litigation.  Yan Zhao informed the appellate court that he had consulted with numerous Delaware counsel, but none were willing to take his case.  The appeals were ultimately dismissed.

9.     Unable to prolong the litigation in Delaware, Defendant Zhou retained new counsel, New York attorney Ning Ye of Defendant Law Offices of Ning Ye, and opened a new front in Washington, D.C.  In a complaint filed in U.S. District Court, several entities controlled by Defendant Zhou made false and outlandish claims about the existence of a fictitious contract and alleged a secret

Gibson, Dunn &
Crutcher LLP

conspiracy between a Delaware judge, the Premier of China, and Plaintiffs, among others.  In the course of the litigation, Zhou's entities sought a restraining order to prevent the sale of a long list of Plaintiffs' properties (and some properties not even owned by Plaintiffs), and an order appointing a receiver. Those motions were denied, the complaint was ultimately dismissed against Plaintiffs, and the balance of the case was stayed pending appeal (including a petition for attorneys' fees and a motion for vexatious litigant sanctions).

10.     When it became clear that Defendant Zhou and his associates would not succeed in their District of Columbia action, they moved on to New York.  Having filed notices of *lis pendens* filings in the DC case, and without waiting for a response in that case, Ning Ye filed *lis pendens* against three of Plaintiffs' properties in New York, falsely claiming that the ownership of the properties was subject to a legitimate ongoing dispute.  Those properties include: the historic Waldorf Astoria Hotel, the Corning Glass Building at 717 5th Avenue in Manhattan, and the JW Marriott Essex House Hotel on Central Park South.  Ning Ye based the *lis pendens* notices on the existence of the D.C. lawsuit, even though he knew that none of the entities that directly owned any of these properties had been subject to his frivolous lawsuit in D.C. and that the only D.C. Defendant entity bearing any relationship at all to those properties (AB Stable VIII LLC) had already been dismissed from the D.C. case. Defendant Zhou was also aware that the entities that directly own the properties had never been parties to his frivolous lawsuit in D.C.  The New York Court agreed that there was no basis for the *lis pendens* filings, issued an injunction against further notices, ordered the *lis pendens* notices cancelled, and ultimately sanctioned Defendants Law Office of Ning Ye and Yan Zhao, jointly and severally. Remarkably, that has not deterred Ning Ye and Defendant Yan Zhao from filing *another* frivolous lawsuit in New York, again claiming ownership of Plaintiffs' properties.

11.     Through their criminal and tortious conduct, Defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 28 U.S.C. § 1961 *et seq.*  As the direct, proximate, and foreseeable result of Defendants' tortious and criminal misconduct, Plaintiffs have suffered substantial injuries, including but not limited to substantial sums in legal fees incurred in: defending against Defendants' extortionate threats across nine harassing lawsuits in three states and the District of Columbia commenced by Defendants or on their behalf, prosecuting four quiet title actions in

California necessary to reverse the actions taken by Defendants' unlawful enterprise, and participating in extensive additional litigation as part of a case involving the sale of Strategic Hotels & Resorts LLC that was required by virtue of the Defendants' conduct. Plaintiffs have also suffered substantial injuries in the form of business interruption, interference with transactions and increased transaction costs, investigatory costs, and reputational harm.

12. Plaintiffs bring this action to hold the group of individuals and shell entities perpetrating this longstanding scheme to impair title to Plaintiffs' properties liable for the harm that they have intentionally inflicted on Plaintiffs. Plaintiffs are entitled to treble damages and attorneys' fees under the federal RICO laws.

## THE PARTIES

### A.    Plaintiffs

13. Anbang Insurance Group Co., Ltd., a Chinese corporation, was a major insurance group in China that acquired substantial real estate holdings in the United States and elsewhere. In June 2017, the former chairman of Anbang, Xiaohui Wu, was arrested on fraud and embezzlement charges. Soon thereafter, the China Insurance Regulatory Commission dispatched a regulatory team to supervise the company. In 2019, Dajia Insurance Group, Co., Ltd ("Dajia"), a Chinese corporation with a principal place of business in Beijing, acquired Anbang's interests in its various subsidiaries. Dajia is one of the largest insurance groups in China, offering life, pension, medical, accident, disability, and other insurance services. Dajia's investment portfolio includes real estate holdings and stakes in financial services and other companies around the world. At all times relevant to this action, Dajia's real estate holdings in the United States have included at least a dozen luxury hotels and one office building, all of which are owned by subsidiaries of Plaintiff AB Stable IX LLC and have been targets of the fraud scheme alleged herein.

14. Plaintiff Anbang Group Holdings Co. Limited is a Hong Kong limited company with a principal place of business in Hong Kong. It is an indirect subsidiary of Dajia and was formerly an indirect subsidiary of Anbang. In 2018, it acquired indirect ownership of Plaintiffs AB Stable IX LLC and AB Stable VIII LLC. Legal expenses incurred by and on behalf of Plaintiffs AB Stable IX LLC and AB Stable VIII LLC are paid by Anbang Group Holdings Co. Limited.

Gibson, Dunn &
Crutcher LLP

15.     Plaintiff AB Stable IX LLC ("AB Stable IX") is a Delaware limited liability company and an indirect subsidiary of Dajia and of Anbang Group Holdings Co. Limited.  Dajia became the indirect owner of AB Stable IX in 2019.  Among the subsidiaries of AB Stable IX are Plaintiff AB Stable VIII LLC, described below; AB Stable LLC, owner of the Waldorf Astoria Hotel in New York; and AB Stable VI LLC, owner of a commercial building known as the Corning Glass Building located at 717 5th Avenue in New York City.

16.     Plaintiff AB Stable VIII LLC ("AB Stable VIII") is a Delaware limited liability company, a direct subsidiary of Plaintiff AB Stable IX, and an indirect subsidiary of Dajia and of Plaintiff Anbang Group Holdings Co. Limited.  It was formerly a subsidiary of Anbang.  Fifteen luxury hotel properties in the United States, including three in this District, have been owned by subsidiaries of Strategic Hotels & Resorts LLC ("Strategic Hotels & Resorts"), which was acquired by AB Stable VIII in 2016.  Through various wholly-owned subsidiaries, AB Stable VIII has been the sole beneficial owner of those fifteen hotel properties, including the Westin St. Francis in San Francisco.  One of the properties owned by a subsidiary of Strategic Hotels & Resorts is the JW Marriott Essex House Hotel in New York City.

B.     **Defendants**

1.     **Individual Defendants**

17.     Defendant Haibin Zhou a/k/a "Hai Bin Zhou" is, upon information and belief, an individual residing in Tiburon, in the Northern District of California.  Zhou has created and used numerous aliases to conceal his true identity in the past, including in connection with the fraud scheme alleged herein.  Those aliases include, upon information and belief:  "Andrew H B Zhou," "Andy Bang (HB) Zhou," "Andy Zhou," "Andy Bang Zhou," "Andy Bang," "Boss Chou," "Martin Chow," and "Joe Martin."  Zhou has also used multiple email addresses in connection with the fraud scheme alleged herein.  He has created, and controls, numerous entities used to perpetrate the scheme described in this Complaint.  He is, and at all relevant times has been, the owner, controller, and/or manager of the Defendant Entities, and the leader of a group of individuals and entities associated in fact that includes the Defendants (the "Andy Bang Enterprise").

18.     Defendant Daniil A. Belitskiy is an individual residing in San Francisco, in the Northern

District of California.  On February 15, 2023, Belitskiy was charged by the San Francisco District Attorney's Office with multiple felony counts of violating section 115(a) of the California Penal Code in connection with the filing of the false grant deeds described in this Complaint.  Under section 115(a), it is a felony violation to knowingly procure or offer "any false or forged instrument to be filed, registered, or recorded in any public office" within the state of California, which instrument, if genuine, might be filed, registered or recorded under California law.  Belitskiy was previously convicted in California courts in Solano and San Mateo Counties in 2012 and 2014, respectively, of second degree robbery and burglary.  In 2015 he pleaded no contest in Alameda County Superior Court to petty theft and receiving stolen property and was sentenced to jail.  In 2020, he pleaded no contest in San Mateo Superior Court to grand theft and was again sentenced to jail.  In 2018, Belitskiy provided written declarations to a Hong Kong court in which he stated that he had been "Vice President" of Defendant Amer Group, Defendant An Bang Group, and a related domestic Chinese company called Da Hua Bang Investment Group Company Limited "since 2010," when Belitskiy would have been 16 or 17 years old.  Some of the foregoing criminal history occurred during the time period he claimed in the Hong Kong declarations to be Vice President of Defendants Amer Group and An Bang Group.  Belitskiy signed multiple false deeds filed in multiple counties in California, each time signing as a "Vice President" of an entity controlled by Defendant Zhou.

19.     Defendant David C. Traub is an individual residing in the San Francisco Bay area, in the Northern District of California.  Traub carried out numerous tasks for Defendant Zhou and on behalf of the Andy Bang Enterprise.  On more than one occasion, Traub described himself to others as a "consultant to Andy Bang."  Traub facilitated the filing of false arbitration awards in Delaware, including flying from California to Delaware to provide documents to Delaware counsel.

20.     Defendant Yan Zhao is, upon information and belief, an individual residing in Washington, DC.  In pleadings filed in Delaware, New York and the District of Columbia, he has been listed as living at various addresses in Washington, DC and New York.  Yan Zhao, who has claimed in court filings to hold a 5.1% interest in Defendants Amer Group and AB Stable Group and to be a director of Defendant World Award Foundation, appeared as a *pro se* plaintiff in efforts to appeal the dismissal of fraudulent judgment cases in Delaware, was a named plaintiff in the case filed in U.S.

Gibson, Dunn & Crutcher LLP

District Court for the District of Columbia, and a named plaintiff in a case against Plaintiff AB Stable VIII and others filed in the Supreme Court for the County of New York.  As an agent of the Andy Bang Enterprise, Yan Zhao filed false declarations in the U.S. District Court for the District of Columbia.

### 2.    Entity Defendants

21.    Defendant Law Office of Ning Ye, Esq, is a single-attorney law firm located in Flushing, New York.  The Law Office of Ning Ye consists solely of Ning Ye, a member of the bar of the State of New York and a member of the bar for the United States District Court for the District of Columbia.  Ning Ye has also been found to have engaged in bad faith cybersquatting of his own.  According to a 2001 decision issued by a panel of the World Intellectual Property Organization Arbitration and Mediation Center, Ning Ye had registered the domain name lockheedmartin.org, which he had filled with material unrelated to Lockheed Martin Corporation, including anti-Chinese government content and sexually-explicit advertising.  Ning Ye, according to the panel decision, had demanded a payout from Lockheed Martin of about $10,000 to relinquish the domain name.  The panel ordered that the domain name be transferred to Lockheed Martin due to Ning Ye's "abusive registration."

22.    In furtherance of Defendants' fraud scheme, the Law Office of Ning Ye has served as counsel for the Andy Bang Enterprise since at least 2020, when, as alleged herein, two different Delaware attorneys moved to withdraw as counsel from the Delaware actions that Zhou and his co-conspirators had commenced in an attempt to capitalize on their fake arbitration awards.  The Law Office of Ning Ye filed appeals in those Delaware actions and later filed harassing and bad faith lawsuits against Plaintiffs in the District of Columbia and State of New York, for which Ning Ye was ultimately sanctioned by courts in both jurisdictions.

23.    Defendant Amer Group LLC is a Delaware limited liability company with a principal place of business in Tiburon, in the Northern District of California.  Amer Group was originally formed as Amer Group Inc., a Delaware corporation, in January 2011, and it was converted to a limited liability company on May 18, 2018.  Corporate filings for Amer Group from July 2014 and August 2017 were signed by "Haibin Zhou" and "Hai Bin Zhou" (as "President").  A corporate filing for Amer Group from May 2018—after Defendants had concocted their scheme to defraud Plaintiffs—was signed by

- 8 -

Gibson, Dunn & Crutcher LLP

"Andrew Bang (HB) Zhou" as "Secretary." Amer Group has used as its mailing address a private drop box (No. 416) at a UPS store located at 1 Blackfield Road in Tiburon, California. Defendant Amer Group was a party to the sham petition and judgment enforcement actions filed in Delaware (seeking to enforce six arbitration awards totaling nearly one *trillion* dollars), the fraudulent sister-state judgment obtained in Alameda County, California, and bad faith lawsuits filed in the District of Columbia and the State of New York.

24.     Defendant World Award Foundation Inc. is a Delaware corporation with a principal place of business in Tiburon, California. World Award Foundation was originally formed as SRH Acquisition Inc. in December 2000. In June 2007, the company's name was changed to "Iamel Foundation Inc.," and its status was purportedly changed to a non-profit organization. The corporate filing for these changes was signed by "Tainxing Zhou," a likely misspelling of Tianxing Zhou a/k/a Dylan Zhou, Haibin Zhou's then six-year-old son, as "President." A tax filing from March 2008 then lists Zhou's son, by that time seven years old, and Zhou's then nine-year-old daughter, "Tiange Zhou" a/k/a Tiger Zhou, as directors of the company. On February 13, 2015, the corporation's name was changed again to World Award Foundation Inc. Corporate and tax filings from that date are signed by "Haibin Zhou" as "President." A subsequent tax filing from February 2017 is signed by "Andy Zhou" as "President," and includes "Andy Zhou" and a "David Tiger" as directors. World Award Foundation has used as its mailing addresses both the UPS Store drop box in Tiburon and a drop box (No. 639) at Tiburon Mail Service, a printing and shipping store, located at 1550 Tiburon Boulevard in Tiburon, California. Defendant World Award Foundation was a party to the sham petition and judgment enforcement actions filed in Delaware, the fraudulent sister-state judgment obtained in Alameda County, California, and the bad faith lawsuit filed in the District of Columbia.

25.     Amer Group and World Award Foundation are little more than sham entities that Zhou and his affiliates have used to further their various schemes. The entities offer no products, sell no services, and have no regular business to speak of. A website that appears to have been created by Zhou and/or his affiliates in or around 2017 or 2018 states that Amer Group, World Award Foundation, and Defendant An Bang Group, among others, established a "World Award Academy of Arts and Sciences" in 1999 (before any of those companies had been formed) and that the entities gave out

- 9 -

"World Super Awards," "UN AWARDS," and an "AZPrize" equaling "up to $2 Million in prizes" to "the best of the best."  A now-removed page from the website once claimed that recipients of these awards included Ted Turner, Pope John Paul II, Mikhail Gorbachev, and Cher, among others—as well as Zhou's son, "Tian Xing Zhou," for "Teenage WORLD AWARD."

26.     In the course of responding to the fraud scheme directed at Plaintiffs, alleged herein, Plaintiffs learned that Defendant Zhou and his affiliates have used and continue to use Amer Group and World Award Foundation as fronts for their attempts to extract payouts from other large companies through trademark infringement and/or bad faith cybersquatting schemes.  More than ten other companies have been the targets of such harassment, including Apple, WhatsApp, Go Pro, Alibaba, and the maker of Zelle, the digital payments network.  These schemes have often started with baseless trademark registrations by Amer Group, World Award Foundation, or non-party World Award LLC (also owned by Zhou) of names that look or sound similar to well-known products sold by large companies, such as "AIphone" instead of "Iphone" or "Apay" instead of "Alipay," Alibaba's China-based digital payments platform with over one billion users.  In at least one case involving the trademarks Zelle and Zellepay, baseless trademark registrations were combined with illegal cybersquatting on several internet domains, including "zellepay.app", which Zhou and Amer Group were ordered to turn over to the maker of Zelle following litigation.  Doubling on these efforts, Defendants Amer Group and World Award Foundation have also submitted bad faith filings to the United States Patent and Trademark Office ("USPTO"), either baselessly seeking to cancel the well-known trademarks or opposing requests to cancel Amer Group's or World Award Foundation's deceptively-named trademarks.  In at least one filing, nonsensical language from the fake "World Super Awards" website was claimed to be a "trademark specimen" supporting a deceptive trademark.  Unsurprisingly, Zhou and the various sham entities have lost nearly all of these disputes, often after the sham entities have defaulted for failing to continue with a case (or appear at all) and in some instances after counsel for the sham entities pleaded with the USPTO to withdraw from legal representation.

27.     Defendant AB Stable Group LLC is a Delaware limited liability company with a principal place of business in Tiburon, California.  AB Stable Group was originally formed as AME

Gibson, Dunn &
Crutcher LLP

Group Inc., in September 2002.  A 2008 tax filing for the corporation lists Zhou's then seven-year-old son, Tianxing Zhou, Zhou's then nine-year-old daughter, Tiange Zhou, and "Joe Martin" as directors. Tax filings from July 2014 later list "Haibin Zhou" as president.  As alleged herein, on May 18, 2018, AME Group Inc. was converted to an LLC and its name was changed to AB Stable Group LLC, so as to resemble the entities that are the Plaintiffs in this action and their affiliates that have "AB Stable" in their names, as part of the first phase of the Andy Bang Enterprise's fraud scheme.  Corporate filings from this conversion were signed by "Andy Bang (H B) Zhou" as "Secretary."  AB Stable Group holds title to the residential real estate in Tiburon, California where Zhou resides.  Defendant AB Stable Group LLC has no affiliation with, or connection to, Plaintiffs or any of the other subsidiaries of Dajia whose names include the words "AB Stable".  Defendant AB Stable Group was a party to the false arbitrations filed in Delaware, the fraudulent sister-state judgment obtained in Alameda County, California, and the bad faith lawsuit filed in the District of Columbia.  It was also listed as one of the grantees in a false deed filed in San Mateo County in October 2018, purporting to transfer the Four Seasons Silicon Valley Hotel to that entity and to Defendant SHR Group LLC.

28.     Defendant An Bang Group LLC is a Delaware limited liability company with a principal place of business in Tiburon, California.  An Bang Group was originally formed as LMK Management Inc. in December 2005.  In May 2007, the company's name was changed to Showsum Inc.  On January 17, 2017, the company was converted to a limited liability company, and its name was changed again to An Bang Group LLC.  This name was selected to resemble the names of the Anbang entities that are owned by Dajia, including Plaintiff Anbang Group Holdings Co. Limited.  An Bang Group LLC has no affiliation with or connection to Anbang Insurance Group Co., Ltd., the former owner of the Plaintiff entities and their real estate holdings, nor to Plaintiff Anbang Group Holdings Co. Limited.  The LLC certificate of formation for Defendant An Bang Group LLC filed in 2017 lists "the name . . . of the member" of the LLC as "Hai Bin Zhou" and the "address of the member" as the UPS Store drop box in Tiburon.  Corporate filings by the company from December 2016 and January 2017 were also signed by "Hai Bin Zhou, President."  Defendant An Bang Group was a party to the sham petition and judgment enforcement actions filed in Delaware, the fraudulent sister-state judgment obtained in Alameda County, California, and bad faith lawsuits filed in the District of Columbia and the State of

- 11 -

Gibson, Dunn &
Crutcher LLP

New York.

29.     Defendant Andy Bang LLC is a Delaware limited liability company with a principal place of business in Tiburon, California.  Andy Bang LLC was formed on November 20, 2018, as the first phase of the Andy Bang Enterprise's fraud scheme was being set in motion.  Defendant Andy Bang LLC is listed as the grantee in a false deed filed in Orange County, California in December 2018, purporting to transfer the Montage Laguna Beach Hotel to that entity.

30.     Defendant SHC Group LLC is a Delaware limited liability company with a principal place of business in Tiburon, California.  SHC Group was formed on May 25, 2018, as the first phase of the Andy Bang Enterprise's fraud scheme against Anbang and its subsidiary Strategic Hotels & Resorts was beginning.  Defendant SHC Group LLC is listed as the grantee in a false deed filed in San Mateo County in September 2018, purporting to transfer the Ritz-Carlton Half Moon Bay Hotel to that entity.

31.     Defendant SHR Group LLC is a Delaware limited liability company with a principal place of business in Tiburon, California.  SHR Group was also formed on May 25, 2018, as the first phase of the Andy Bang Enterprise's fraud scheme was beginning.  Defendant SHR Group LLC is listed as the grantee in a false deed filed in San Francisco County in September 2018, purporting to transfer the Westin St. Francis Hotel to that entity, and as one of the grantees in a false deed filed in San Mateo County in October, 2018 purporting to transfer the Four Seasons Silicon Valley Hotel to that entity and to Defendant AB Stable Group.

### 3.     Other Entities

32.     World Award Group LLC ("World Award Group") is a Delaware limited liability company with a principal place of business in Tiburon, California.  World Award Group was formed on November 27, 2018.

33.     SHC Holdings Group LLC ("SHC Holdings Group") is a Delaware limited liability company with a principal place of business in Tiburon, California.  SHC Holdings Group was formed on August 24, 2018.  SHC Holdings Group is listed as the grantee in a false deed filed in Orange County in October 2018, purporting to transfer the Ritz-Carlton Laguna Niguel Hotel to that entity, and another false deed filed in Los Angeles County in December, 2018, purporting to transfer the Loews Santa

Monica Beach Hotel to that entity.

34.     SHR Holding Group LLC ("SHR Holding Group") is a Delaware limited liability company with a principal place of business in Tiburon, California.  SHR Holding Group was also formed on August 24, 2018.  SHR Holding Group is listed as the grantee in a false deed filed in Orange County in October, 2018, purporting to transfer the Montage Laguna Beach Hotel to that entity.

35.     Da Hua Bang Investment Group Company Limited ("Da Hua Bang Investment Group") is a Chinese entity affiliated with other entities connected to Defendant Zhao that engages in bad faith trademark litigation in China and elsewhere.  It appears to sell no products or services.  In filings in Hong Kong in 2018, Defendant Belitskiy claimed to be a vice president of Da Hua Bang Investment Group.  It is listed as a party subject to the various sham arbitration awards described in this Complaint.

C.     **Non-Party Co-Conspirators**

36.     Certain other non-party individuals and entities played roles, direct or indirect, in the Andy Bang Enterprise's fraudulent and extortionate scheme.  Foremost among these individuals and entities are the following:

37.     Non-party co-conspirator John Doe a/k/a "Mike Martin" is an unknown person or persons, who may include Defendant Zhou or his family members, who operated under the alias "Mike Martin" and frequently used the email address mikemartintiger@gmail.com.  In several emails in 2019, "Mike Martin" claimed to be a former attorney who was, alternately, 86, 87, and 88 years old.  Defendant Zhou, using the alias "Andy Bang," told a lawyer in Delaware in 2019 that "Mike Martin" was the "CFO in charge [of] company money."  On several occasions, emails from the mikemartintiger email address have purported to be from individuals other than "Mike Martin," including a "Catharine" or "Catherine" and a "Mary" who claimed to be passing on information from "Mike Martin."  The residence of Defendant John Doe a/k/a "Mike Martin" is unknown, although he or she worked in close coordination with other members of the Andy Bang Enterprise in carrying out its goals.  Plaintiffs are informed and believe, and on that basis allege, that John Doe a/k/a "Mike Martin" is responsible for the acts alleged in this Complaint.  When the true names and capacities of such individual or individuals have been ascertained, Plaintiffs may amend this Complaint to name those individuals as Defendants.

38.     Non-party co-conspirator Spencer Chase is an individual residing in the San Francisco

- 13 -

Gibson, Dunn & Crutcher LLP

Bay area, in this District.  Until June 20, 2019, Chase held a notary public commission from the State of California.  Chase's license was revoked on that date after Chase was found by the California Secretary of State to have failed to, among other things, properly verify and record the identification of individuals for whom Chase provided notarial acts, in violation of California Government Code § 8206.  At that time, Chase agreed, and was required by the Secretary of State, to immediately destroy all notary public seals.  Chase did not do so and, as alleged herein, Chase's notary public seal was later used in connection with sham court filings submitted as part of the Andy Bang Enterprise's efforts to obtain and enforce court judgments against Plaintiffs based on fake arbitration awards.

39.     Non-party co-conspirator Steven A. Nielsen is a member of the bar of the State of California.  He maintains a law office, Nielsen Patents, located in Larkspur, in the Northern District of California.  Nielsen served as counsel for the Andy Bang Enterprise, assisting Defendants Zhou, John Doe a/k/a "Mike Martin," and the Entity Defendants in carrying out their fraud scheme, including by identifying individuals to sign the sham arbitration awards described herein as fake "arbitrators," by creating legal pleadings relating to those fake arbitration awards, by acting as liaison with Delaware counsel, and by personally filing some of the fraudulent court submissions described herein.

40.     Non-party co-conspirator Stamatios Stamoulis is an attorney licensed to practice in the State of Delaware.  As alleged more fully herein, in connection with Andy Bang Enterprise's efforts to obtain and enforce court judgments against Plaintiffs based on fake arbitration awards, Zhou and several of the Defendant Entities engaged Stamoulis to file numerous fraudulent court filings on their behalf.  Stamoulis did so while advising Zhou on how to tailor the filings and "not get[] the awards too high," as co-conspirator Steven Nielsen put it, so as to avoid drawing the attention of the court and being forced to "produce" evidence to support the fraudulent awards.

41.     Non-party co-conspirator Tiange Zhou a/k/a Tian Ge Zhou a/k/a Tiger Zhou a/k/a Tiger Chou a/k/a Tiger Chow is, upon information and belief, an individual residing in San Mateo County, California and a family member of Defendant Zhou.

42.     Non-party co-conspirator Tianxing Zhou a/k/a Tian Xing Zhou a/k/a Dylan Zou a/k/a Dylan Chou a/k/a Dylan Chow is, upon information and belief, an individual residing in Marin County, California and a family member of Defendant Zhou.

**JURISDICTION AND VENUE**

43.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a), because Plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, raises a federal question.

44.     Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) because all of the Defendants reside in this District, have an agent in this district, or transact their affairs in this District, and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.  Nearly all of the Defendants reside in or have their principal place of business in this District: the most recent known residence addresses for Defendants Zhou, Belitskiy, and Traub are in this District, and Defendants World Award Foundation, Amer Group, An Bang Group, AB Stable Group, Andy Bang LLC, SHC Group, and SHR Group are located in this District.  Defendant Zhou directed the Andy Bang Enterprise from this District; the signing and filing of numerous false grant deeds and judgment documents described herein, as well as the mail and electronic communications that originated from Defendants residing in this District, occurred in multiple counties within this District, and constitute a substantial portion of the activities of the Andy Bang Enterprise; a substantial portion of the properties that are the target of activities by the Andy Bang Enterprise are located in this District, including the Westin St. Francis San Francisco, the Ritz-Carlton Half Moon Bay, and the Four Seasons Silicon Valley; and substantial harm caused to Plaintiffs by the activity of the Andy Bang Enterprise occurred in this District.  Defendants Law Office of Ning Ye and Yan Zhao also transact affairs in this District, receive payments from this District, and act as agents or officers of the Entity Defendants referenced above, all of which have their principal places of business in this District.

45.     The exercise of personal jurisdiction over Defendants is reasonable and proper in this District pursuant to 18 U.S.C. § 1965(a), and because, as noted above, all Individual Defendants except Yan Zhao are residents and citizens of California and, in the case of the Entity Defendants, all except the Law Office of Ning Ye have their principal place of business in California; because Defendants Yan Zhao and Law Office of Ning Ye transact their affairs in this district and act as agents or officers of Entity Defendants that have their principal place of business in this District; and because each Defendant knowingly committed acts that form the basis of this Complaint in this District, directed or

Gibson, Dunn &
Crutcher LLP

conspired with others to commit acts in this District, or purposely availed themselves of the privileges of doing business in this District, as fully set forth herein.

**DIVISIONAL ASSIGNMENT**

46.    Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San Francisco division.

**FACTUAL ALLEGATIONS**

47.    As Plaintiffs have since learned, by the Spring of 2018 Zhou and his co-conspirators had all but abandoned their years-long attempt to harass Anbang Insurance Group—as Zhou had done with other companies—by improperly claiming trademarks similar to those of Anbang Insurance Group in China, Europe, the United States and elsewhere.

48.    On April 17, 2015, the Chinese Trademark Review and Adjudication Board (the "Trademark Review Board"), China's version of the USPTO, had issued an order declaring that Anbang Insurance Group was the sole owner of its Chinese-language trademark 安邦 (pronounced Anbang).  That ruling followed a prior Chinese appellate court decision from February 17, 2014, in which the appellate court rejected a frivolous trademark claim by Da Hua Bang Investment Group, the Chinese company affiliated with Defendants Zhou and Belitskiy, and remanded the case back to the Trademark Review Board.  Two trademark cases brought in Hong Kong in 2017 and early 2018 by Defendants Amer Group and An Bang Group, and by Da Hua Bang Investment Group, also failed and were subsequently dismissed.

49.    In Europe, Zhou and his soon-to-be co-conspirators had fared no better.  As early as October 2014, Anbang Insurance Group had registered trademarks associated with the anglicized word or phrase "Anbang" with the European Union Intellectual Property Office ("EUIPO").  Several years later, on June 8, 2017, Defendant Amer Group attempted to register an infringing trademark that was little more than a copy-and-paste-job of one of Anbang Insurance Group's earlier European trademarks—though with Zhou's "An Bang Group" carefully wedged in.  This effort also failed spectacularly: Anbang Insurance Group caught on to Amer Group's infringement, and on March 23, 2018, it submitted an opposition to the infringing trademark with the EUIPO.  This opposition would later be upheld, and Amer Group's frivolous trademark registration would be "entirely refused in

- 16 -

respect of the European Union," as the EUIPO ruled in May 2019.  A subsequent appeal by Amer Group would also be "rejected as inadmissible" in November 2019.

50.     In the United States, Defendants' various schemes had also failed to yield the payout that Zhou and his soon-to-be co-conspirators were seeking.  In June 2017, Anbang Insurance Group filed a petition seeking to cancel Defendant Amer Group's trademark "AB An Bang Ji Tuan An Bang Group."  At about the same time, however, there were major changes at Anbang Insurance Group.  The former CEO, Xiaohui Wu, was arrested on fraud and embezzlement charges in June 2017.  Soon thereafter, the China Insurance Regulatory Commission dispatched a regulatory team to supervise the company.  Anbang Insurance Group subsequently transferred its main assets, including its interests in various subsidiaries, to Dajia, which focused on domestic insurance business in China.  By early 2018, Anbang Insurance Group had concluded that there would be no business demand for its core insurance products in the United States.  The planned change to Dajia also meant that any future products would likely fall under a "Dajia" name, not "Anbang."  Accordingly, by April 2018, Anbang Insurance Group had decided not to pursue the earlier cancellation petition and, that same month, opted not to file a required submission with the USPTO supporting the petition.  The USPTO would ultimately issue a judgment by default in favor of Amer Group in December 2018.

51.     Thus, by late Spring of 2018, Zhou and his co-conspirators had lost any leverage that they had hoped to create in their efforts to exact a payout from Anbang Insurance Group as mere "trademark trolls."  As Plaintiffs learned much later, when this failed Zhou and his co-conspirators turned to fraud.  As alleged herein, that fraud scheme would ultimately include several phases over multiple years, continuing to this day.

## I.     OVERVIEW OF THE RICO ENTERPRISE

52.     Defendants Zhou, Belitskiy, Traub, and Yan Zhao (collectively, the "Individual Defendants") and Entity Defendants Law Office of Ning Ye, Amer Group, World Award Foundation, AB Stable Group, Andy Bang LLC, An Bang Group, SHC Group,  SHR Group, and others, formed the Andy Bang Enterprise, and directly or indirectly conducted the affairs of the enterprise through a pattern of racketeering activity consisting of a scheme to defraud Plaintiffs, their affiliates, and potential purchasers and financiers of Plaintiffs' real estate properties through materially false and fraudulent

representations relating to (i) ownership of those properties; (ii) the existence of a fictitious contract between certain Plaintiffs and certain of the Defendants that purportedly required the payment of hundreds of billions of dollars; and (iii) the existence of arbitration proceedings relating to the fictitious contract and ownership of the properties.

53.     The common purpose of the Andy Bang Enterprise has been, and is, either to convert Plaintiffs' real estate properties to Defendants or to so encumber those properties with false claims of ownership that Dajia or its subsidiaries (including Plaintiffs) would pay large sums of money to stop the harassment.  The manner and means of this scheme has been to repeatedly create and file false documents in multiple forums, asserting fraudulent claims of ownership or rights to own the properties in order to encumber or cloud title on them, while avoiding actual adjudication of the merits of their false claims (which would require the submission of supporting evidence).

54.     Defendants and their co-conspirators have organized the Andy Bang Enterprise into a cohesive group with specific and assigned responsibilities and a clear command structure.  While the organization of the criminal enterprise has changed over time, and its members may have held different roles at different times, the criminal enterprise has generally been structured to operate as a continuing unit in order to accomplish the goals of their criminal enterprise.  In particular:

a.     Defendant Zhou has orchestrated and overseen the scheme to defraud and extort Plaintiffs, and has directed Defendants and the non-party co-conspirators to accomplish the overall aims of the criminal enterprise—namely, filing false property records, forging documents, disseminating the forged documents, preparing fake legal documents including sham arbitration awards, filing sham lawsuits, spreading false and misleading information to third parties, and systematically obstructing Plaintiffs' business and efforts to uncover Defendants' wrongdoing. Defendants Belitskiy, Traub, Yan Zhao, and other associates of the Andy Bang Enterprise conducted its affairs by creating and using forged documents, false property records, and sham arbitration documents to carry out the scheme.  Steven Nielsen and Defendant Law Office of Ning Ye worked as counsel for the Andy Bang Enterprise, creating and using forged documents, false property records, and sham arbitration documents, and filing court documents and sham lawsuits to carry out the scheme.

b.     Defendants Zhou, Belitskiy, SHC Group, SHR Group, AB Stable Group, Andy

Gibson, Dunn &
Crutcher LLP

Bang LLC, World Award Group, and others, authorized and participated in the forging, filing, and disseminating of the false grant deeds that purported to transfer ownership over six of Plaintiffs' hotel properties in California to sham entities owned and controlled by Zhou.

c.      Defendants Zhou, Traub, World Award Foundation, AB Stable Group, Amer Group, An Bang Group, and others authorized and participated in the creation of the fake arbitration awards and/or in the attempts to obtain and enforce purported court judgments against Plaintiffs based on those fake awards through sham litigation in Delaware and California.

d.      Defendants Zhou, Yan Zhao, Law Office of Ning Ye, World Award Foundation, AB Stable Group, Amer Group, An Bang Group, and others, have authorized and participated in the filing and/or prosecution of sham litigation in Delaware, the District of Columbia, and New York, and in the filing of sham *lis pendens* notices in New York.

e.      Non-party co-conspirator Tiange 'Tiger' Zhou assisted in prosecuting the sham arbitration award litigation in Delaware.

55.      The Andy Bang Enterprise conducted its affairs through a pattern of racketeering activity, as described below, that involved the use of the U.S. mails and interstate wire communications, including emails and extortion affecting interstate commerce, all in violation of federal laws under Title 18 of the United States Code.

## II.      RACKETEERING ACTIVITY

### A.      The Andy Bang Enterprise Purports to Transfer Title to Six of Plaintiffs' Hotel Properties Via False Grant Deeds

56.      Defendants' fraud scheme began in or around May 2018, when Zhou and his co-conspirators took the first steps toward forming the Andy Bang Enterprise and filing the fraudulent grant deeds described herein.  These false grant deeds each purported to transfer title to one of six hotel properties in California from Plaintiffs and their affiliates to shell companies controlled by Defendant Zhou.

#### 1.      Zhou Creates or Renames Sham Entities for Scheme—Start of 'Andy Bang' Alias

57.      To carry out and disguise this phase of the scheme, in May 2018 Zhou began to create or reorganize several shell companies so that they would have names similar to those of Plaintiffs'

subsidiaries or affiliates.

58.     In particular, on May 18, 2018, Zhou and his co-conspirators changed the name of AME Group, Inc. to AB Stable Group LLC, so as to resemble Plaintiff AB Stable IX LLC, AB Stable VIII LLC, and their affiliates that use "AB Stable" in their names.

59.     One week later, on May 25, 2018, Zhou and his co-conspirators created two new shell entities—SHR Group and SHC Group—and approximately three months after that, on August 24, 2018, Zhou and his co-conspirators created yet two more shell entities—SHR Holding Group and SHC Holdings Group.   The new entities were given names that resemble the names of subsidiaries of Strategic Hotels & Resorts that own specific hotel properties, and that are indirectly owned by Plaintiffs AB Stable VIII, AB Stable IX, and Anbang Group Holdings Co. Limited.  Of these:

a.     Defendant SHR Group was named to resemble SHR St. Francis LLC and SHR Palo Alto, LLC, indirect subsidiaries of Plaintiffs that owned the Westin St. Francis Hotel in San Francisco and the Four Seasons Silicon Valley, respectively;

b.     Defendant SHC Group was named to resemble SHC Half Moon Bay, LLC, another indirect subsidiary of Plaintiffs that owned the Ritz-Carlton Half Moon Bay;

c.     SHC Holdings Group was named to resemble SHC Laguna Niguel, LLC and New Santa Monica Beach Hotel, LLC, indirect subsidiaries of Plaintiffs that owned the Ritz-Carlton Laguna Niguel and the Loews Santa Monica Beach Hotel, respectively; and

d.     SHR Holding Group was named to resemble SHR MLB, LLC, an indirect subsidiary of Plaintiffs that owned the Montage Laguna Beach Hotel.

**2.     False Deed Transfers for the Westin San Francisco and the Ritz-Carlton Half Moon Bay**

60.     Less than a month after the above shell entities were created, the Andy Bang Enterprise began the first of its fraudulent attempts to transfer title.  On September 17, 2018, Defendant Zhou or an affiliate fraudulently recorded a false grant deed with the San Francisco County Clerk's office; this false grant deed purported to transfer title to the Westin St. Francis Hotel from SHR St. Francis, LLC, an indirect subsidiary of Plaintiff AB Stable VIII, to Defendant SHR Group.  As with all of the other false grant deeds, this document bore the signature of Defendant Daniil Belitskiy, who listed his title

as "Vice President" of SHR Group.  The false grant deed also contained a representation signed by "Andy Bang Zhou" attesting that zero transfer tax was owed.  (See below.)  This representation falsely implied that the subject transfer was solely a change to the *manner* of holding title rather than a substantive change in ownership; for any substantive change in ownership, a documentary transfer tax is imposed pursuant to California law.  California Revenue and Tax Code §§ 11911, 11925(d).



61.    Just two days later, on September 19, 2018, Defendant Zhou or an affiliate caused another false grant deed to be fraudulently recorded, this time in the San Mateo County Clerk's office. The document that was filed purported to transfer title to the Ritz-Carlton Half Moon Bay from SHC Half Moon Bay, LLC, an indirect subsidiary of Plaintiff AB Stable VIII, to the Defendants SHC Group and AB Stable Group.  The false grant deed was dated September 5, 2018 and again signed by Defendant Daniil Belitskiy as a purported "Vice President" of the entities.  As before, no transfer tax was imposed by design: immediately next to the stamp indicating that no tax was due, someone had

written "Grantor & Grantee are the same."

### 3. False Deed Transfers for the Four Seasons Silicon Valley, the Ritz-Carlton Laguna Niguel, and the Montage Laguna Beach

62.     The scheme continued one month later, when Defendant Zhou or an affiliate caused three more false grant deeds to be filed.  On October 12, 2018, a false grant deed was filed for the Four Seasons Palo Alto in San Mateo County, California.  Dated October 10, 2018, the document contained similar recitations and purported to transfer title to the Four Seasons Palo Alto from SHR Palo Alto, LLC, an indirect subsidiary of Plaintiff AB Stable VIII, to Defendants AB Stable Group and SHR Group.  The document was again signed by Defendant Belitskiy as "Vice President."

63.     On October 30, 2018, a false grant deed was also filed for the Montage Laguna Beach in Orange County, California.  Dated October 26, 2018, the document contained similar recitations and purported to transfer ownership of the hotel from SHR MLB, LLC, an indirect subsidiary of Plaintiff AB Stable VIII, to SHR Holding Group.  Again, the filing was signed by Belitskiy as purported "Vice President" of the grantee.  No transfer tax was imposed for this filing either, and a handwritten notation on the document indicated that the conveyance changed only the manner of holding title and that the grantor and grantee were the same.

64.     On October 31, 2018, Zhou and his co-conspirators caused yet another false grant deed to be filed, this time for the Ritz-Carlton Laguna Niguel, also in Orange County.  Dated October 26, 2018, it contained similar recitations and purported to transfer ownership of the hotel from SHC Laguna Niguel I LLC, an indirect subsidiary of Plaintiff AB Stable VIII, to SHC Holdings Group.  Belitskiy again signed the document as "Vice President."  A similar notation on the document indicated no transfer tax was to be paid.

65.     For several days in late October and early November 2018, including the days on which false grant deeds for the Montage Laguna Beach and Ritz-Carlton Laguna Niguel were filed with the Orange County Recorder's office, Defendant Haibin Zhou stayed at the Montage Laguna Beach Hotel, occupying two different rooms under the alias "Andy Zhou."  During this time, Zhou asked to speak to the CEO of the Montage Hotel, claiming to have an ownership interest in the Montage, but was unable to secure a meeting.

Gibson, Dunn & Crutcher LLP

### 4. Further False Deed Transfers for the Ritz-Carlton Laguna Niguel and the Montage Laguna Beach

66.     A little over a month later, in December 2018, three additional false grant deeds were filed.  Two were for the Orange County properties for which Defendant Zhou had already recorded false deeds.  On December 20, 2018, a second deed was recorded for the Montage Laguna Beach. Dated December 12, 2018, it purported to transfer the hotel from Zhou's deceptively-named SHR Holding Group to Defendant Andy Bang LLC, a new shell company formed by Zhou on November 20, 2018.  That same day, a second deed was filed for the Ritz-Carlton Laguna Niguel.  Also dated December 12, 2018, the filing purported to transfer the hotel from the deceptively-named SHC Holdings Group to World Award Group, another shell company formed by Defendant Zhou.

### 5. False Deed Transfer for The Loews Santa Monica

67.     The eighth and final false grant deed was filed on December 28, 2018.  It purported to transfer title to the Loews Santa Monica Beach Hotel in Los Angeles County, California, from New Santa Monica Beach Hotel, L.L.C., an indirect subsidiary of Plaintiff AB Stable VIII, to Defendant Zhou's SHC Holdings Group.  It too was signed by Belitskiy.

### 6. Anbang's Subsidiaries Are Forced to Reverse the Fraudulent Transfers Via Quiet Title Actions in Four Counties

68.     Plaintiffs first learned of the false grant deeds beginning in or around May 2019, as a result of an inquiry from the San Mateo County recorder's office.  In September and October 2019, Plaintiffs' subsidiaries—Strategic Hotels & Resorts and the entities that directly owned each of the hotel properties—commenced legal actions against the Defendant Entities and other Zhou-controlled shell companies in San Francisco, San Mateo, Los Angeles, and Orange counties.  These lawsuits sought to quiet title and cancel the false grant deeds clouding title to the six affected California hotels. Plaintiffs' subsidiaries also reported the false grant deeds to law enforcement in each of the four counties.

69.     Although the entities named as grantees on the false grant deeds were properly served in the quiet title actions, none of the Defendants in those four actions answered the complaints or appeared at any of the multiple hearings that occurred in each of the cases.  Instead, the only sign of those Defendants came via unofficial representatives who occasionally turned up at various hearings.

- 23 -

Gibson, Dunn & Crutcher LLP

On September 17, 2019, after a temporary restraining order hearing in San Mateo Superior Court, counsel for Plaintiffs was approached by an attorney who claimed that "Andy Bang" had requested he show up and observe the proceedings. Although the attorney stated that he had not been retained and was not authorized to speak on Zhou's behalf, he revealed that Zhou had claimed to him that he owned an equity interest in the hotels. The attorney was accompanied by a person who, on information and belief, was Defendant David Traub, who stated that he was a friend of "Andy Bang." Attorneys from another law firm, based in Los Angeles, also showed up to at least one hearing in each of the four quiet title cases to request a continuance on behalf of the Defendants; when those continuances were not granted, the attorneys never filed any documents or made any appearance in any of the cases.

70.     In October 2019, courts in all four counties granted temporary restraining orders and, later, preliminary injunctions barring the Defendant entities in the cases—including Defendants AB Stable Group and World Award Foundation—and other Zhou-controlled shell companies from further transferring title in the California properties or otherwise encumbering them. In December 2019 the courts in Orange, San Francisco, and San Mateo counties granted default judgments against all Defendants, quieting title to five of the six properties and cancelling the false grant deeds. The court in Los Angeles followed suit a month later, granting a default judgment against the remaining sham entity, SHC Holdings Group, and cancelling the false deed affecting the Santa Monica Beach Hotel.

71.     Though simple in its execution, Defendants' criminal scheme had sweeping impacts. Although Plaintiffs' subsidiaries immediately commenced the quiet title litigation, ultimately the false deeds and the cloud on title that they created delayed the consummation of a multi-billion dollar deal to sell Strategic Hotels & Resorts and its portfolio of luxury hotel properties owned by Plaintiff AB Stable VIII through its subsidiaries, including the six California properties, to an affiliate of Korean conglomerate Mirae Asset Global Investments, Co., Ltd ("Mirae"). Months later, after the onset of the COVID-19 pandemic, Mirae refused to close the transaction. As noted below, litigation with Mirae ensued. In the course of this litigation, Mirae seized on the claims made by Defendants to assert that title to the properties was threatened, greatly expanding the scope of the case.

72.     Defendants' criminal scheme caused Plaintiffs to suffer injury in the form of attorney's fees and costs incurred to quiet title and respond to the false deeds. It also caused Plaintiffs to suffer

- 24 -

injury by undermining the sale of the properties to Mirae, and expanding litigation relating to the failure of that transaction, as further described below.

### B.  The Sham "DRAA" Agreement

73.     The next three phases of Defendants' fraud scheme would follow in succession soon after the last false grant deed was recorded in December 2018.  As set forth in greater detail herein, all of these subsequent phases relied on a core lie: that Anbang Insurance Group and several of the Defendant Entities, all controlled by Defendant Zhou, had entered into a secret contract (i) that required Anbang Insurance Group to pay *billions* of dollars in liquidated damages if it lost its petition to cancel Amer Group's U.S. trademark "AB An Bang Ji Tuan An Bang Group" (which by the Spring of 2018 Anbang Insurance Group had already opted not to continue pursuing) and (ii) that required arbitration under the Delaware Rapid Arbitration Act, a set of obscure arbitration rules with drastically reduced judicial protections, sometimes referred to by the acronym "DRAA."

74.     The details of this lie changed as Defendants' fraud scheme progressed and the lie was repeated.  During the fraud scheme's initial phase, none of the false grant deeds or related documents even mentioned an agreement requiring arbitration under the DRAA.  As alleged herein, a fictitious "DRAA Agreement" is referenced for the first time only in a bizarre filing in the Beijing Intellectual Property Court, dated December 2018, by the Defendants Amer Group, An Bang Group, AB Stable Group and World Award Foundation in the course of another unsuccessful trademark case.  That document, dated just after the judgment by default issued by the USPTO in the United States, references the U.S. proceeding and appeals to the head of the China Insurance Regulatory Commission regulatory team overseeing Anbang to settle with Amer Group, An Bang Group, AB Stable Group and World Award Foundation.  Near the end of the document, it refers in passing to a "DRAA Agreement," argues that the Defendants should be paid $90 billion, and suggests that they would compensate the Chinese government for its bailout of Anbang.  As noted below, following a hearing on March 5, 2019, the Beijing Intellectual Property Court issued a ruling rebuffing the effort to challenge Anbang Insurance Group's trademarks in China.

75.     A "DRAA Agreement" is also referenced in the fake arbitration awards dating to in or around July 2019, which were unknown to Plaintiffs until December of 2019.  It was later learned that

- 25 -

when their own Delaware attorney asked for a copy of the purported contract in August 2019, Defendant Zhou (acting as "Joe Martin") and Defendant David Traub could only come up with a one-page document in Chinese, which they told the Delaware attorney was an "excerpt" of the agreement requiring arbitration under the DRAA.  It was not until nearly five months later, in December 2019, that Defendant John Doe a/k/a "Mike Martin" sent their new Delaware attorney, non-party co-conspirator Stamoulis, a document described as the "DRAA Agreement" referenced in the fake arbitration awards from July 2019.  This 16-page Chinese-language document included purported signatures on behalf of Entity Defendants World Award Foundation, Amer Group, An Bang Group, and AME Group, Inc. (the predecessor entity that became Defendant AB Stable Group), a handwritten signature of "Andy Bang," and several forged signatures and/or forged seals for Anbang Insurance Group, the company's former CEO (Xiaohui Wu), and a former director of Anbang Insurance Group (Xiaolu Chen).  That document, which differed from the one-page excerpt provided to the prior Delaware attorney, is believed to have been shown to a Delaware Court of Chancery judge in January 2020; however, co-conspirator Stamoulis represented to the judge at that time that the document was so confidential that he could not disclose a copy to counsel for the counterparty to that agreement.  Counsel for Plaintiffs was not provided a copy until a court order in April 2020 required Stamoulis to produce the document.  English translations of large portions of the supposedly secret document were later attached as exhibits to the complaint filed by Defendants in the sham case filed in October 2020 in the District of Columbia (the "DC Action") that is described below.

76.    That there was never an authentic "DRAA Agreement" is obvious for numerous reasons.  The notion that Anbang Insurance Group, one of the largest insurance groups in China, would agree, in essence, to pay tens of billions of dollars to trademark troll entities simply for daring to assert a trademark for "An Bang" in the United States, a country where it was not based and where it had no active insurance business, was far-flung to begin with.  That Anbang Insurance Group would simultaneously agree to pay *hundreds* of billions of dollars in liquidated damages as a penalty for failing to make payment of those billions of dollars is even more irrational.  And the idea that Anbang Insurance Group would do so in a secret Chinese document while simultaneously limiting its remedies under any such agreement to an obscure arbitration scheme in a foreign country is nonsensical.

77.     It is no wonder that in late 2019 and early 2020, as the lie was just beginning, Defendant Zhou and his co-conspirators initially went to great pains to avoid showing a copy of the purported "DRAA Agreement" to anyone: there *was* no physical document, not even a forged one, that could be passed off as such a contract.  Thus, as alleged herein, in August 2019 Defendants Zhou and Traub only shared with their Delaware attorney the one-page fake "excerpt."  Later, Defendant Zhou (as Joe Martin) and John Doe a/k/a "Mike Martin" told that attorney and attorney Stamoulis in 2019 and early 2020 that a mysterious additional "Anti-Leak Agreement" (with whom, they never said) prohibited the sharing or translation of any part of the "DRAA Agreement" and imposed a penalty of $*270 billion* in liquidated damages for any disclosure.  This lie also appears to have been completely forgotten by October 2020, when certain of the Entity Defendants publicly filed parts of an English translation of the so-called "DRAA Agreement" as attachments to their civil complaint in the DC Action.

78.     The forged "DRAA Agreement" and the one-page fake "excerpt" are also riddled with signs that they are obvious frauds—and not just because they do not match.  In particular:

a.     The "DRAA Agreement" includes fake handwritten dates suggesting that it was signed by Anbang Insurance Group on May 15, 2017, yet the document references events that occurred *after* this date.  Paragraph 21 of the document requires that Da Hua Bang Investment Group cease the lawsuit against the Chinese Trademark Review Board and Anbang Insurance Group that it brought in the Beijing Intellectual Property Court, yet that lawsuit was not commenced until July 8, 2018, over a year after the DRAA Agreement was purportedly signed.  A portion of Paragraph 79—which is written in larger, differently-colored font than the rest of the document—also allows for the Zhou-controlled entities to bring suit against the China Insurance Regulatory Commission, China's then-insurance industry regulator, if the latter seized control of Anbang Insurance Group, despite the fact there was no hint in May 2017—which was prior to the arrest of Xiaohui Wu—that Anbang Insurance Group would be placed in a government receivership.  The China Insurance Regulatory Commission, which later became the China Banking and Insurance Regulatory Commission ("CBIRC"), did not take control of Anbang Insurance Group until February 2018, nine months after the purported signature date on the fake "DRAA Agreement."

b.     The purported signature of Xiaohui Wu, Anbang Insurance Group's CEO in

- 27 -

Gibson, Dunn &
Crutcher LLP

2017, appears to be a carbon copy of a signature created by a stamp block used by Mr. Wu, except that the signature created by Mr. Wu's stamp block is nearly twice the size, and every other known signature using that block is in black ink, rather than the blue ink used in the "DRAA Agreement."

c.      There is, inexplicably, a faint horizontal black line immediately underneath the forged signature for Mr. Wu *as part of the signature*, a remnant of the forger's hasty copying of both Mr. Wu's signature and the signature line below it from another document.  (See below.)



d.      The forged official company seal for Anbang Insurance Group is likewise much smaller than the genuine seal, which is created by a stamp block that comes in one size.

e.      The personal seal for another of the purported signatories, former Anbang Insurance Group director Xiaolu Chen, was in a different color and used a different font than every other example of Mr. Chen's personal seal appearing in documents relating to Anbang Insurance Group.  Moreover, by the date of the purported signature, Xiaolu Chen was no longer a director of Anbang Insurance Group.

f.      Despite the fact that Anbang Insurance Group was one of the largest insurance groups in China, employing a large in-house legal department and advised by outside counsel from multiple law firms around the world, portions of the "DRAA Agreement" are nearly incoherent and do not read as if they were drafted by a lawyer, much less one familiar with corporate agreements.  No lawyers are listed on the document.

g.      Parts of the "DRAA Agreement" are written in traditional Chinese characters, a type of script used in Hong Kong and by certain Chinese speakers in North America (among other places), and parts of the document are written in simplified Chinese characters—an exceptionally uncommon combination that bespeaks a lack of careful drafting and review.  The use of traditional Chinese characters by any large corporation in China is doubly odd given that simplified Chinese has

- 28 -

Gibson, Dunn & Crutcher LLP

been standard usage in China for over 60 years and given that, since at least 2000, essentially all signs, notices, print media, as well as all written documents used by governmental entities or schools, are required by law to be written in simplified Chinese.

h.    The "DRAA Agreement" is written in font with multiple colors and multiple sizes, yet another unlikely feature of a document that purports to require payment of tens of billions of dollars by a large company. (See below.)

各方一致同意
(79—89)

79，甲方经陈小鲁先生来回协调，鉴于保险企业要求诚信保险第一，客观事实第一原则,感谢丙方及其他三方经过陈小鲁先生经手提供了关键的筹建费用约贰亿玖仟万港元现金,以及乙方和戊方在甲方成立之前先申请和使用了"AB","AB"图形,以及"安邦"和"ANBANG"等多国商标.如果保险企业纠纷久拖不决,将失信于广大保险客户,不利于新的保险客户购买保险。根据国际惯例同意按总资产约二万人民币,约三千亿美的30%,即900亿美元(90B)对其他伍方支付一次性补偿,并且把华尔道夫酒店(Waldorf Astoria Hotel)及其Strategic hotels & resorts 公司16个酒店及4個地产以及10亿美元现金对Waldorf Astoria Hotel华尔道夫饭店的改造费用以及717 fifth avenue New york 办公楼加起来
共计90亿美元的资产及现金作为抵押物品,和作为履约定金,16个酒店及4个地产如下:

1  Westin St. Francis San Francisco

2. Fairmont Scottsdale Princess

3. Four Seasons Hotel Austin

i.    The fake one-page "excerpt" and the corresponding portion of the "DRAA Agreement" do not even look the same or have identical language: the fake "excerpt" has two fewer lines of text at the top than the corresponding portion of the "DRAA Agreement"; the sub-paragraph spacing in paragraph 87 of each document is different, with the "DRAA Agreement" including blank spaces between sub-paragraphs and the fake "excerpt" having no spaces; and paragraph 87 of the fake "excerpt" has three additional words not even found in the "DRAA Agreement," while paragraph 89 of the fake "excerpt" has one additional word. Indeed, even the placement of the periods in each document is different, with the fake "excerpt" displaying periods in the middle of a line of text and the "DRAA Agreement" displaying periods at the baseline of text.

79.    These factors were identified and explained in detail in an expert report prepared by a board-certified forensic document examiner and submitted in connection with a civil proceeding in the

Gibson, Dunn &
Crutcher LLP

Delaware Court of Chancery.  The expert concluded that the "DRAA Agreement" was a forgery, which conclusion was credited by the court.

### C.    The Sham Arbitration Awards

80.    Nonetheless, in 2019, not long after the last of the false grant deeds was filed, the Andy Bang Enterprise began the next phase of its fraud scheme, using the idea of a fictitious contract that purportedly required arbitration under the DRAA.  Defendant Zhou and his co-conspirators concocted sham arbitration awards, each purportedly based on such an agreement, and sought to enforce those fake awards against Plaintiffs in courts in Delaware and California.

### 1.    The Sham Mid-July 2019 Filing

81.    Defendants' efforts on this phase began by July 2019 at the latest.  Zhou and his co-conspirators created a sham "Verified Petition for Appointment of Arbitrator" on behalf of World Award Foundation, Amer Group, An Bang Group, and AB Stable Group.  On July 19, 2019, Nielsen, counsel for the Andy Bang Enterprise, electronically filed the fake petition in the Delaware Court of Common Pleas (the "July 19th Petition").

82.    The July 19th Petition falsely stated that World Award Foundation, Amer Group, An Bang Group, and AB Stable Group, on the one hand, and Anbang Insurance Group, the CBIRC (China's Banking and Insurance Regulatory Commission), and Da Hua Bang Investment Group (the Chinese company affiliated with Zhou), on the other hand, were "parties" to a contract dated March 5, 2019.  This date was an odd choice for the date of a contract between the parties given that, on the *exact same date*, the Beijing Intellectual Property Court in Beijing, China, held a hearing on what would ultimately prove to be a failed attempt by World Award Foundation, Amer Group, An Bang Group, AB Stable Group, and Da Hua Bang Investment Group to appeal the 2015 order from the Trademark Review Board declaring Anbang Insurance Group to be the sole owner of the Chinese-language Anbang trademark.  The nine-page court record of the proceedings in the Beijing Intellectual Property Court on that date were signed by attorneys for Anbang Insurance Group and representatives of Da Hua Bang Investment Group.  Unbeknownst to the former until much later, the latter annotated the third page of the court record, adding a handwritten paragraph in the margin that described the bizarre document filed earlier in the proceedings (which is described above), and asserting that World Award

Foundation, Amer Group, An Bang Group, and AB Stable Group may seek mediation.  The July 19th Petition, perhaps referring to this post-hearing annotation in the Beijing court case which ultimately resulted in a decision against World Award Foundation, Amer Group, An Bang Group, AB Stable Group, and Da Hua Bang Investment Group, falsely stated that the purported March 5, 2019 "agreement" included a "written agreement to arbitrate," and that an unspecified "dispute" had "arisen" between the parties.  The sham petition appeared to name Anbang Insurance Group, the CBIRC, and Zhou's Da Hua Bang Investment Group as "Respondents" to the arbitration.  It was signed by attorney Steven Nielsen.

83.    Though Steven Nielsen attempted to file in the Court of Common Pleas, the July 19th Petition was actually captioned as though it were a filing in the Delaware Court of Chancery.  It was never served on Anbang Insurance Group or, upon information and belief, anyone else.  One week later, on July 26, 2019, the Delaware Court of Common Pleas rejected the filing.

### 2.    The Making of Fake Arbitration Awards

84.    Rather than waiting to hear the result of their sham July 19th Petition, however, Zhou and his co-conspirators rushed to manufacture three fake arbitration awards (the "Sham Preliminary Awards").  Zhou and his co-conspirators found five individuals from Marin County, California to sign the documents as if they were members of an arbitral tribunal issuing the sham awards.  These five individuals were: Guanghui Dai, Peter Crowley, Courtney J. Lewis, Brooks Miller, and Adrian Elder.

85.    Guanghui Dai was a waiter at Ming's Restaurant in Tiburon, California, who had met Zhou only because the latter was a frequent customer of the restaurant.  Dai is not proficient in English and has since stated that he never attended an arbitration and signed the Sham Preliminary Awards merely as a "favor" for a frequent customer (Zhou).  The other four individuals were associates or acquaintances of Nielsen, many of them no stranger to criminal activity.  Crowley, Miller and Elder all have been charged with criminal offenses.  Elder has multiple convictions, including a 2014 conviction for possession of an assault weapon.  None have legal training or other relevant expertise.

86.    Of course, no arbitration ever took place.  The Sham Preliminary Awards themselves were inconsistent, slipshod documents that did little more than state that Anbang Insurance Group was supposed to either pay huge sums of money or hand over billions of dollars in real estate properties to

Gibson, Dunn & Crutcher LLP

Zhou and his co-conspirators.  Each sham award listed Entity Defendants World Award Foundation, Amer Group, An Bang Group, and AB Stable Group as "Claimants," and Anbang Insurance Group, the CBIRC, and Da Hua Bang Investment Group as "Respondents." (See page one of the first of the three Sham Preliminary Awards below.)  Da Hua Bang Investment Group was and is, of course, the Chinese entity controlled by or affiliated with Defendant Zhou; it has had no affiliation whatsoever with Anbang Insurance Group and was listed as a Respondent merely to create the illusion of a contested arbitration proceeding.  And David Gao, Esq. from "Respondent 2 Law Firm, New York, NY" does not appear to have been an attorney licensed in New York at that time.



87.     Each of the Sham Preliminary Awards referenced a "DRAA Agreement" and falsely stated that a "Notice of DRAA and DRAA Statement of Claim" was "filed" on November 28, 2018.  Each then stated that Anbang Insurance Group and the CBIRC had "signed" this "Notice of DRAA and Statement of Claim" on January 20, 2019.  In fact, neither Anbang nor any of its affiliates ever signed any such "Notice of DRAA" or "DRAA Statement of Claim."  Zhou and his co-conspirators

- 32 -

chose the January 20, 2019 date only because Anbang Insurance Group had received a copy of an unrelated document from Zhou on this date, and Zhou and his co-conspirators could falsely claim that the shipping record showing delivery of this document was actually a record showing delivery of the purported "DRAA Statement of Claim."

88.     Each of the Sham Preliminary Awards also included a section titled "Case Summary," which stated that the Zhou-controlled entities had "asserted" several "causes of action," including "violation of DRAA suitability," "breach of agreement," and "negligent failure to supervise." Each document then stated that Anbang Insurance Group *both* "did not respond" *and* "asserted various affirmative defenses for keeping ANBANG trademarks in China only, and totally agreed other claims of defendant."

89.     Each document also stated that Anbang Insurance Group "offered ownership" of "twenty" real estate properties, plus an additional $90 *billion* in "collateral," to the Zhou-controlled entities in exchange for Amer Group's cancelling its deceptively-named trademark "AB An Bang Ji Tuan An Bang Group" in the United States. The twenty properties included all of Plaintiffs' luxury hotels, at least one hotel property not even owned by Plaintiffs, and the New York commercial property targeted by the Andy Bang Enterprise's fraud scheme. As if such an offer were not strange enough, each sham award then stated that *after* making this offer, Anbang Insurance Group then triggered the massive obligation by filing its July 2017 petition with the USPTO seeking to cancel the U.S. trademark.

90.     The Sham Preliminary Awards each purported to grant billions of dollars in cumulative damages to Defendants World Award Foundation, Amer Group, An Bang Group, and AB Stable Group on the exact same day—July 21, 2019. The first sham award purported to grant either $9 billion "in cash," or the "twenty properties, including hotels and their full ownerships," plus "[f]ull ownership" over "25 companies," including Plaintiff AB Stable VIII, through which Anbang Insurance Group indirectly owned these properties and other assets. In an apparent reference to the fraudulent deed scheme from the previous year, the first sham award also falsely asserted that "six properties deeds have already been transferred to claimant."

91.     The second sham award purported to grant the same entities an additional $180 billion

- 33 -

Gibson, Dunn &
Crutcher LLP

in "compensatory damages," plus interest.  It identified 23 branches of Chinese banks in the United States, described as Anbang Insurance Group and CBIRC "owed/governed/supervised/related/enforced Bank's assets and licenses," against which the judgment could purportedly be enforced.

92.     The third sham award purported to grant the same entities another additional $180 billion "in cash," or, in the alternative, "[f]ull ownership" of "7 banks,[]23 branches" and all of the "assets and companies" listed in two attachments.  These attachments listed over 100 government-owned corporations, including the "China Railway," multiple sovereign wealth funds, and several electrical utilities.  The third sham award also appeared to repeat a prior claim that Plaintiffs had somehow signed a DRAA Agreement on March 5, 2019, the day of the hearing before the Beijing Intellectual Property Court on what was ultimately the failed attempt by the Zhou-controlled entities to appeal the Trademark Review Board's 2015 order declaring Anbang Insurance Group to be the sole owner of the Chinese-language Anbang trademark.  One part of this third sham award stated: "Please also see DRAA BJPIC [Beijing Intellectual Property Court] hearing records for additional evidence." Another section again stated: "Respondent 1 [Anbang Insurance Group] appeared and signed on March 5 2019."  Plaintiffs were unaware of these purported arbitration awards until December 2019, when they learned of them through the sham judgments filed in Delaware, which Plaintiffs discovered only after learning of the sister-state judgment in Alameda County, California described below.

### 3.     The Sham August 2019 Delaware Arbitration Petition

93.     With these first three fake arbitration awards in hand, the Andy Bang Enterprise immediately began its efforts to convert them into court judgments against Plaintiffs through fraudulent court filings.

94.     On the same day that Nielsen's initial July 19th Petition was rejected, July 26, 2019, Zhou caused attorney Steven Nielsen to contact an attorney licensed to practice in Delaware, a sole practitioner, to ask about retaining him to file a second petition in Delaware courts.  (This email and many others referenced herein were obtained in discovery following a ruling in the Delaware litigation described below that the crime-fraud exception to the attorney-client privilege applied to the communications.)

95.     On August 5, 2019, that Delaware attorney had an in-person meeting with Defendant

Zhou (under the assumed identity "Joe Martin") and Defendant David Traub in Delaware, during which, according to the attorney's contemporaneous notes, Zhou and Traub "hand-deliver[ed] notarized copies of the 8 documents that comprise[d] [Andy Bang's] case."

96.    One of these documents was a single-page Chinese-language document that was described to the Delaware attorney as an excerpt from the purported "DRAA Agreement."  Traub also gave the attorney the first, second, and third sham awards, as well as a draft Petition for Proceeding Under Delaware Rapid Arbitration Act with a handwritten note directing that the date of an "agreement to arbitrate" referenced therein be changed from "March 5, 2019" to "May 15, 2017."  In an email later that day, the Delaware attorney stated that he was attaching a "revised petition eliminating an alleged date for the agreement to arbitrate under the DRAA, since it appears there is an argument about when that exactly occurred."

97.    Later on August 5, 2019, the Delaware attorney filed a two-page "Petition for Proceeding Under Delaware Rapid Arbitration Act" in the Delaware Court of Chancery on behalf of Defendant Entities in this case: World Award Foundation, Amer Group, An Bang Group, and AB Stable Group (the "Delaware Petition").  *See World Award Foundation Inc. v. Anbang Ins. Grp. Co., Ltd.*, C.A. No. 2019-0605-JTL (Del. Ch.).  The Delaware Petition falsely alleged that Petitioners and "Respondents" Anbang Insurance Group, the CBIRC, and Da Hua Bang Investment Group were "parties to an agreement . . . which includes a written agreement to arbitrate under the Delaware Rapid Arbitration Act."  It further claimed that an unspecified "dispute ha[d] arisen between Petitioners and Respondents under the Agreement, which provides that the dispute must be resolved under the DRAA," and asked the court to "[a]llow and order the agreed-upon arbitration to proceed under its auspices."  It did not identify the nature of the dispute or the document containing the arbitration provision.

98.    The Delaware Petition was accompanied by a Verification from "Andy Bang," which was notarized by Spencer John Chase, a San Francisco notary, on August 5, 2019.  (See below.) But Chase's notary license had been suspended months earlier by the California Secretary of State on

multiple grounds, including failure to properly verify persons' identities.



8-5-2019

#### 4.    Efforts to Persuade the Attorney to File the Fraudulent Arbitration Awards in Delaware

99.    Shortly after he filed the Delaware Petition, the Delaware attorney became suspicious of the legitimacy of the Awards he had received from Defendants.  Zhou, who had been operating under the assumed identity "Joe Martin," and John Doe a/k/a "Mike Martin" sought to convince the attorney to file the three fraudulent Awards with the Chancery Court, including by dangling the prospect of additional work on cases against other high-profile Chinese companies.  On August 6, 2019, John Doe a/k/a "Mike Martin", emailed the attorney, stating "[a]ll things of DRAA is done, DRAA final awards also done . . . after full case No. issued, please just file again, let court stamp on the three DRAA awards . . . we have three big cases for you."  On August 8th "Mike Martin" again wrote to the attorney, "We'll talk to Alibaba about DRAA next month in their headquarters in silicon valley."

100.    The Delaware attorney remained suspicious of the legitimacy of the Awards, and doubted whether they could be enforced.  For example, on August 9, 2019, he emailed attorney Steven Nielsen and representatives of Defendants, stating that, "[a]ny supposed prior 'proceedings' under the DRAA … are likely or certainly invalid.  Under the DRAA, the Court is supposed to appoint arbitrators—that has not happened yet.  There is an obvious issue with proceedings happening before arbitrators that have not even been appointed."  On September 3, he expressed to "Mike Martin" via email "concern[s] as to the validity of the awards," including because each was for "billions of dollars," "ha[d] not yet been confirmed by any court," was "oddly worded," vague as to what relief had been

Gibson, Dunn &
Crutcher LLP

granted, silent as to the rights of creditors, and "reference[d] high-profile properties such as the New York Waldorf Astoria."

101.    Chief among the Delaware attorney's concerns was Defendants' refusal, after repeated requests, to provide him with a copy of the actual agreement referenced in the Delaware Petition.  On August 29, 2019, the attorney met with Zhou (posing as "Joe Martin"), who claimed, falsely, that a *separate* agreement between Anbang Insurance Group and World Award Foundation, Amer Group, An Bang Group, and AB Stable Group prohibited the parties from translating or sharing the purported DRAA Agreement.  The attorney emailed "Mike Martin" on September 5, 2019, insisting that he "cannot, and should not, petition the Court to enter the [Awards] until I have more information, including translations of [the] DRAA Agreement."  "Mike Martin" replied "[w]e cannot translate the stuff, otherwise we'll pay 180 billion, you'll pay for us?"

102.    At the same time, Defendants continued to entice the Delaware attorney to file the sham Awards with offers of money and the potential for additional work involving filings targeting other companies with fake DRAA agreements.  In one such communication, on September 3, 2019, John Doe a/k/a "Mike Martin" emailed the attorney, "how about you get another 20k right away after we get court stamps?  And good news, we talked about DRAA with Alibaba in DC already, you'll get another one, please get this done ASAP."  (See below.)

> **From:** mike martin <mikemartintiger@gmail.com>
> **Sent:** Tuesday, September 03, 2019 6:03 AM
> **To:** ███████████████
> **Subject:** Re: Delaware DRAA Lawsuit
>
> Please see these, they have rights to appeal within 15 days of final awards
> Also we went to Chinese consulate, they need court stamps first, we need service them, how about you get another 20k
> right away after got court stamps?
> And good news, we talked about DRAA with Alibaba in DC already, you'll get another one, please get this done ASAP

103.    According to the Delaware attorney's notes from a September 10, 2019 telephone call he had with Zhou (posing as "Joe Martin"), Zhou attempted to provide a backstory that would assuage the concerns of his counsel.  On that call, Zhou claimed that "Andy Bang" had founded Anbang Insurance Group in China in 2000, but somehow lost control of the company after Xiaohui Wu, the actual Chairman and Chief Executive of Anbang until 2017, joined.  Zhou claimed that the purported "DRAA Agreement" had been drafted by the son of a "5 star general" in China and was executed May

15, 2017 between Andy Bang, who signed on behalf of the Defendant entities, and Xiaohui Wu.  In response to questions from the Delaware attorney as to why Anbang Insurance Group would agree to arbitrate a dispute over a trademark by signing the "DRAA Agreement," only to file a cancellation petition against Defendants with the USPTO, Zhou stated that the "DRAA Agreement" was signed *after* Anbang Insurance Group filed its petition.  At this moment Zhou could not even keep his own lies straight: May 15, 2017, the date that Zhou claimed the "DRAA Agreement" was signed, was four weeks *before* Anbang filed its cancellation petition with USPTO.

104.    During the September 10, 2019 call with the Delaware attorney, Zhou also claimed that Da Hua Bang Investment Group—one of the Respondents named in the Delaware Petition and the sham Awards even though it had no connection to Anbang Insurance Group—had selected as an arbitrator Guanghui Dai (the Chinese restaurant employee who acknowledged that he signed the Award as a "favor" to a customer and denied attending any arbitration), but that World Award Foundation, Amer Group, An Bang Group, and AB Stable Group had selected the other four arbitrators.  Zhou also admitted that no Anbang Insurance Group representative attended the purported "arbitration."  He further claimed that the Sham Preliminary Awards were drafted by the law firm Venable LLP and Guanghui Dai, who has since denied participating in the drafting of any arbitration awards and, as alleged herein, speaks and writes almost no English and therefore could not have written them anyway.

### 5.    The September 2019 Sham 'Default Judgment'

105.    The efforts by Defendant Zhou, "Mike Martin" and Steven Nielsen to convince the Delaware attorney to file the Sham Preliminary Awards with the Delaware Court of Chancery failed.  On September 13, the Delaware attorney wrote to "Mike Martin," "Andy Bang," and "Joe Martin" that he was "not willing to simply submit the [A]wards to the Court without a complaint hoping that a court clerk will stamp them," noting that it was "incorrect procedure" and that the Court "may well also think of this action as an attempt to trick the Court."

106.    Intent on carrying out its fraudulent scheme, the Andy Bang Enterprise decided to circumvent the attorney.  Following the attorney's refusal to file the Sham Preliminary Awards, Steven Nielsen took matters into his own hands.  On or about September 16, 2019, Steven Nielsen and other conspirators created a purported "Default Judgment" that had signatures from the same "arbitrators"

who had signed the Sham Preliminary Awards.

107.    In order to move forward with their attempt to convert the Sham Preliminary Awards into court judgments in Delaware, on or about September 24, 2019, and without their Delaware attorney's knowledge, Steven Nielsen caused the "Default Judgment" document, which referenced a "Notice of DRAA Arbitration resulting in three awards to Respondents," to be mailed to the Court of Chancery in Delaware.   The document attached evidence that a copy of it had been mailed from Tiburon, California to China by USPS on August 2, 2019.

108.    With this submission, Steven Nielsen also included a "Notice of Appointment of Arbitrators," which falsely claimed the "respective parties" (including Anbang Insurance Group) had selected the five fake arbitrators, all under a cover letter asking to "have the clerk of the court of Chancery Stamp/File the enclosed documents" and then "return the left over stamped copies to my office."

109.    On October 1, 2019, the Court of Chancery docketed the documents, including the "Default Judgment," along with a "Notice of Documents" that explicitly stated they were being filed "for information purposes only" and that "[t]he filing of these materials by the court does not have any implications under the Delaware Rapid Arbitration Act."

110.    That same day, in a series of emails to Steven Nielsen, "Mike Martin," and Defendant Zhou (through his pseudonyms "Andy Bang," and "Joe Martin"), the Delaware attorney, who learned of the filing from the court, stated that he had previously advised Nielsen that he "did not think [such a filing] was a good idea and/or permissible," and that he planned to move to withdraw from the case as a result of Nielsen's conduct in unilaterally submitting the documents to the court.  The attorney further explained that the court had stated during a teleconference that the court "did not want the docketing of the filing to be interpreted as a docketing of a final award."  And the attorney reiterated his concerns regarding the veracity of the Awards, describing them in his notes as "badly-drafted awards for as much as $300B+, DRAA Agreement that cannot be shown, etc."  He ended his emails with a warning: "The Court can sanction litigant and lawyer misconduct with penalties including financial ones."

### 6. Defendants Attempt to Enforce the Sham Preliminary Awards

111. Unable to convince their Delaware attorney to do their bidding, Nielsen and the other members of the Andy Bang Enterprise began looking for other Delaware counsel that would. On October 20, 2019, Defendants hired attorney Stamatios Stamoulis. Stamoulis' engagement letter was signed by "Mike Martin" as VP. Tellingly, Defendant "Mike Martin," in emails with the Delaware attorney he had previously hired, expressly prohibited that attorney from speaking to the new attorney, Stamoulis, about the case.

112. As they had with the previous Delaware attorney, Zhou and "Mike Martin" used the prospect of monetary bonuses and additional business to entice Stamoulis to quickly file the sham Awards with the Delaware courts. In an October 23, 2019 email, "Mike Martin" asked Stamoulis to "[p]lease file this award to be enforced by the superior court of DE . . . we have another big ALIBABA 430 billion in NYC for you, must file ASAP." (See below.) The First Sham Preliminary Award was attached to the email.

| | |
|---|---|
| **From:** | mike martin [mikemartintiger@gmail.com] |
| **Sent:** | 10/23/2019 9:20:20 PM |
| **To:** | Stamatios Stamoulis [stamoulis@swdelaw.com]; worldawardllc@gmail.com |
| **Subject:** | Fwd: scanned document |
| **Attachments:** | 20191023175941288.pdf |

Dear Stamatios,
Please file this award to be enforced by the superior court of DE at this week
We have another big ALIBABA 430 billion in NYC for you, must file ASAP
Thanks

113. The next day, despite having never seen the purported "DRAA Agreement," Stamoulis filed the First Sham Preliminary Award with the Delaware Superior Court accompanied by an affidavit falsely attesting to its veracity and fraudulently asserting that the "Default Judgment" docketed on October 1 by the Court of Chancery was a "confirmed final judgment." *See World Award Foundation v. An Bang Ins. Grp. Co., Ltd.*, C.A. No. N19J-05055 (Del. Super. Ct.).

114. As further described below, Defendants were already planning on using these false filings to bolster their fraud scheme in California. On October 29, 2019 "Mike Martin" asked Stamoulis "[c]ould you please tell us we can use the court stamped stuff to file in California to collect or we must wait for the judge signed judgment?" Two days later, on October 31, 2019, "Mike Martin" sent

- 40 -

Gibson, Dunn &
Crutcher LLP

Stamoulis an email attaching the second Sham Preliminary Award and asking Stamoulis to file it "tomorrow."

115.    The next day, November 1, 2019, Stamoulis opened another action in Delaware Superior Court, filing the Second Sham Preliminary Award alongside the fake "Default Judgment." *See World Award Foundation v. An Bang Ins. Grp. Co., Ltd.*, C.A. No. N19J-05253 (Del. Super. Ct.). Once again, Stamoulis filed an affidavit falsely attesting to the Award's authenticity and representing that the Default Judgment was a "confirmed final judgment."

116.    On November 5, 2019, John Doe a/k/a "Mike Martin" sent Stamoulis an email attaching the Third Sham Preliminary Award asking Stamoulis to file it.  On November 8, 2019, Stamoulis used what "Mike Martin" had sent to open yet another action in Delaware Superior Court to enforce the Third Award.  *See World Award Foundation. v. An Bang Ins. Grp. Co., Ltd.*, C.A. No. N19J-05458 (Del. Super. Ct.).  Stamoulis again filed the fake "Default Judgment" and an affidavit falsely attesting to the Award's authenticity and representing that the Default Judgment was a "confirmed final judgment."

117.    During this period, Defendant Zhou and "Mike Martin" continued to entice Stamoulis to commence additional actions with the promise of a huge payout.  In a November 7, 2019 email, "Mike Martin" asked Stamoulis to "[p]lease check HOW TO 100% control the DE company listed in the judgment and CHANGE the ownership of the company . . . we'll have another big one ALIBABA." The next day, "Mike Martin" added "Please try your best to FILE NOW TODAY Youll [sic] get a bi[g] bonus."

### 7.    Defendants Attempt to Enforce the Sham Preliminary Awards Via a Sister State Judgment in California Superior Court

118.    With the three actions filed in Delaware, Zhou and his co-conspirators immediately set out to commence enforcement actions to try to collect on the Sham Preliminary Awards and to interfere with Plaintiffs' disposition of their hotel properties.  On November 14, 2019, John Doe a/k/a "Mike Martin" emailed Stamoulis with a request that Stamoulis get an "'exemplified' copy" of a "Sister State Judgment" and instructions that he "PLEASE DO ASAP They are selling assets in California and NYC."  The next day, on November 15, 2019, Stamoulis sent "Mike Martin" an email attaching what

Stamoulis called "Exemplified Judgments."

119.   On December 6, 2019, Defendant Entities World Award Foundation, AB Stable Group, Amer Group, and An Bang Group filed an "Application for Entry of Judgment on Sister-State Judgment" in California Superior Court, Alameda County.  *See World Award Foundation v. Anbang Ins. Grp. Co. Ltd.*, No. RG19046027 (Cal. Super. Ct. Alameda Cty.).  (See below.)  The application

> 3. a. Sister state *(name)*:  Delaware
>
>    b. Sister-state court *(name and location)*:  New Castle County Superior Court
>       500 North King Street, Wilmington, DE 19801
>    c. Judgment entered in sister state on *(date)*:  November 16, 2019
>
> 4. An authenticated copy of the sister-state judgment is attached to this application. Include accrued interest on the sister-state judgment in the California judgment (item 5c).
>    a. Annual interest rate allowed by sister state *(specify)*:   9%
>
>    b. Law of sister state establishing interest rate *(specify)*:   Del. Code tit. 6, § 2301(a)
>
> 5. a. Amount remaining unpaid on sister-state judgment: _____  $    177,000,000,000.00
>    b. Amount of filing fee for the application: _____  $               435.00
>    c. Accrued interest on sister-state judgment: _____  $                 0.00
>    d. Amount of judgment to be entered *(total of 5a, b, and c)*: _____  $    177,000,000,435.00
>       *(Continued on reverse)* (six hotels as 3 billion paid already)
>
> Form Approved by the
> Judicial Council of California   OEB | Essential   **APPLICATION FOR ENTRY OF JUDGMENT ON**   CCP 1710.15
> EJ-105 [Rev. July 1, 1983]        ceb.com | Forms        **SISTER-STATE JUDGMENT**          1710.20
> Optional Form                                                                    WORLD AWARD FOUNDATION

was filed by an attorney licensed in California who had been retained by Defendant Zhou and "Mike Martin."  The application attached the docket-stamped Third Award that Stamoulis had filed in Delaware Superior Court on November 8, 2019, falsely representing that it was a "Sister State Judgment" subject to enforcement in California.  While the attached Third Award stated that the respondents were liable for $180 billion, the information supplied on the Alameda County judgment application form noted that the sister-state judgment being sought was for just over $177 billion, with a parenthetical that "six hotels as 3 billion paid already."  According to a proof of service filed December 9, 2019 in the Alameda Superior Court, the attorney caused a copy of the proposed judgment to be mailed from his office in Berkeley, California to Anbang Insurance Group in China.

### 8.   Defendants Create and Attempt to Enforce the Sham 'Final Awards'

120.   While Defendants' efforts to enforce the Sham Preliminary Awards in California and elsewhere were in motion, Zhou and his co-conspirators also created three additional fake arbitration

"awards," each styled as a "Final Award" (the "Sham Final Awards").

121.    The Sham Final Awards were all purportedly signed in Marin County, California, on November 22, 2019 by an entirely new slate of five "arbitrators," who, on information and belief, signed at the behest of attorney Steven Nielsen.  These five "arbitrators," also residents of Marin County, were apparently gathered by Nielsen.  None are lawyers or have any remotely relevant training or experience in international trademark disputes: they were recruited simply because they were willing to sign the sham awards.  Two of the five appear to be a mother and son.  Each of the documents purported to enter "judgment by default" for the previous set of sham Awards.

122.    Several weeks later, beginning early December 2019, Zhou and his co-conspirators caused Delaware attorney Stamoulis to commence three new actions in Delaware Superior Court to enforce the Sham Final Awards.

123.    On December 9, 2019, John Doe a/k/a "Mike Martin" sent Stamoulis an email attaching a copy of the first Sham Final Award.  In the email, "Mike Martin" made clear Defendants' objective to cloud title on Plaintiffs' real estate properties and to obstruct sales of those properties, stating "Please file this one NOW today with DE superior court, we are racing with few deadlines and try to stop them selling assets[.]"  (See below.)

> **From:** mike martin <mikemartintiger@gmail.com>
> **Sent:** Monday, December 9, 2019 4:02 PM
> **To:** Stamatios Stamoulis <stamoulis@swdelaw.com>
> **Subject:** Fwd: Scanned documents
>
> Please file this one NOW today with DE superior court, we are racing with few deadlines and try to stop them selling assets
> Many thanks

124.    Stamoulis filed the first Final Award on December 10, 2019, accompanied by the fake "Default Judgment" docketed in the Court of Chancery and an affidavit falsely representing that the fake Final Award "stems from a judgment deemed confirmed by the Court of Chancery of the State of Delaware pursuant to the Delaware Rapid Arbitration Act."  *World Award Foundation v. An Bang Ins. Grp. Co. Ltd.*, C.A. No. N19J-05868 (Del. Super. Ct.).

125.    That evening, on December 10, 2019, "Mike Martin" sent Stamoulis two additional emails attaching copies of the second and third Sham Final Awards.  Both emails asked that Stamoulis

file the awards "tomorrow," although "Mike Martin" was careful to instruct Stamoulis to file the sham awards in two different courts, so as to avoid raising any suspicion by the court clerks.

126.   When Stamoulis had not filed either sham award over the next several days, on December 12, 2019, Zhou and his co-conspirators created yet another fake document: a "Final Arbitration Judgment Order," signed by the same five individuals who had signed the Sham Final Awards, which recited the six previously-issued sham awards and purported to "enter judgment" in favor of World Award Foundation, Amer Group, An Bang Group, and AB Stable Group.

127.   The next day, December 13, 2019, "Mike Martin" sent Stamoulis two emails attaching the second and third Sham Final awards again and a third email attaching the sham "Final Judgment." The emails instructed Stamoulis to file the sham awards in two different courts and to file the "Final Judgment" along with each.  An email from "Mike Martin" to Stamoulis later that day underscored the objectives of Zhou and his co-conspirators, saying "PLEASE do get notary now, and file the two new AWARDS now with the ORDER, we are racing them[.]"

128.   Stamoulis attempted to open similar actions for the second and third Final Awards on December 13, 2019.  After an initial error, both actions were commenced on December 16, 2019.  *See World Award Foundation v. An Bang Ins. Grp. Co. Ltd.*, C.A. No. N19J-06026 (Del. Super. Ct.) and *World Award Foundation v. An Bang Ins. Grp. Co. Ltd.*, C.A. No. N19J-06027 (Del. Super. Ct.).

129.   Immediately thereafter on December 16, 2019, "Mike Martin"  sent Stamoulis an email asking Stamoulis to "request three exemplified copies" of judgments from the court and emphasizing, "[w]e are racing with them."

130.   Communications between Defendants and their counsel during this period confirm that all understood what they were doing was illegitimate and intended to interfere with Plaintiffs' efforts to sell their own properties.  On December 11, 2019, after the action to enforce the First Sham Final Award was commenced, Stamoulis emailed "Mike Martin", stating "every Award is based on a default order [that the previous Delaware attorney] said was for information purpose only.  We need to start a brand new chancery case and get the court to adopt the order and issue an opinion affirming it."  "Mike Martin" replied the same day, "We are racing them in Cal, DC, NYC etc., please must file tomorrow, as for affidavit 1, up to you . . . After you got these stamped back, we'll send you BONUS right away."

- 44 -

Gibson, Dunn & Crutcher LLP

Likewise, on December 13, 2019, before Stamoulis filed the actions to enforce the second and third Sham Final Awards, Stamoulis emailed Steven Nielsen and "Mike Martin", stating "I think we should file the final judgment that sums up awards I, II, and III for 369 billion . . . because it links to prior superior court orders, it should not be questioned . . .  I think we do this one last filing and not push clerk to do more."   In a follow-up email sent the same day, Steven Nielsen replied, "I agree with [Stamoulis'] thoughts on not getting the awards too high.  We have been very fortunate with the court clerk so far.  ***If the numbers get too high we may have to start producing more supporting documents***." (See below, emphasis added).  As alleged herein, Stamoulis would later that day file the actions seeking to enforce both the second and third Sham Final Awards.

From: Steven A. Nielsen <Steve@nielsenpatents.com>
Sent: Friday, December 13, 2019 3:36 PM
To: mike martin <mikemartintiger@gmail.com>
Cc: Stamatios Stamoulis <stamoulis@swdelaw.com>
Subject: I agree with Stam's proposed revisions to the Final Award

Hello Mike,

I just got off of the phone with Stam. I agree with Stam's thoughts on not getting the awards too high. We have been very fortunate with the court clerk so far. If the numbers get too high we may have to start producing more supporting documents.

If you have any questions or concerns, please do not hesitate to contact me.

Best regards,

Steven A. Nielsen
*Registered Patent Attorney*

131.   At some point prior to December 20, 2019, "Mike Martin" contacted a debt collection company to try to collect on the sham Awards filed in Delaware.  Plaintiffs are unaware of any collection action taken by that company.

### 9.   Anbang's Subsidiaries Successfully Void the Fraudulent Filings and the Fraud Scheme is Further Revealed

132.   Anbang and its subsidiaries first learned in mid-December of the sham arbitration award filings in Delaware after a brief phone call from the Berkeley attorney who had filed the "Application for Entry of Judgment on Sister-State Judgment" in Alameda County Superior Court.  Plaintiffs and their subsidiaries, at considerable cost, moved to void the fraudulent filings in both states.

### a)   Alameda County Sister State Judgment

133.   On December 23, 2019, the Alameda County Superior Court granted a temporary restraining order enjoining Defendants World Award Foundation, Amer Group, An Bang Group, and AB Stable Group, as well as their agents and representatives, from seeking to enforce the purported judgment Defendants filed on December 6th against Plaintiffs, and from "filing any other lawsuits seeking to enforce any arbitration awards or sister-state judgments Plaintiffs purport to have obtained against Dajia . . . ."   The Berkeley attorney who had filed the application immediately moved to withdraw.   After further proceedings, the Alameda County Superior Court later vacated the judgment and dismissed the action with prejudice on March 10, 2020, on the grounds that the Defendant Entities had obtained both the Delaware and Alameda judgments through fraud.

### b)   The Delaware Arbitration Awards

134.   On December 19, 2019, shortly after Plaintiffs learned of the Delaware and California actions, Anbang Insurance Group filed a Motion for Temporary Restraining Order and Sanctions in the Delaware Court of Chancery action in which the initial Delaware Petition had been filed.   Recognizing that Defendants' fraud was unraveling, attorney Stamoulis stipulated to a TRO on behalf of Petitioners in that action the next day, December 20, 2019.   That TRO enjoined Petitioners in that action, as well as their affiliates and representatives (including Zhou), from "[p]urporting to arbitrate any dispute against Dajia," from representing to any other court that they had obtained a judgment from the Delaware Court of Chancery or Superior Court, from seeking any further action or relief in any of the Superior Court enforcement actions Defendants had caused their Delaware attorneys to file, and from making "any further filings in any court relating to any purported arbitration with Dajia."

135.   Also on December 20, 2019, the Delaware attorney who had filed the initial Delaware Petition filed a Motion to Withdraw from his representation of World Award Foundation, Amer Group, An Bang Group, and AB Stable Group in the Chancery Court action.   The attorney's motion stated that "[f]undamental disagreements have arisen between Movants and Petitioners regarding the appropriate course of actions in this matter going forward."   The court granted the attorney's motion to withdraw.

136.   On December 30, 2019, "Mike Martin" sent attorney Stamoulis a copy of a document that was described as the "DRAA Agreement."   After reviewing the sham DRAA Agreement,

Gibson, Dunn &
Crutcher LLP

Stamoulis refused to continue the representation.  The next day, December 31, 2019, Stamoulis filed a letter in the Chancery Court action seeking permission to withdraw.  The court later granted Stamoulis' motion to withdraw only in part, and required him to continue with his representation to the extent of relaying communications to World Award Foundation, Amer Group, An Bang Group, and AB Stable Group—and, by extension, Defendant Zhou.

137.    Even after Stamoulis attempted to withdraw, however, on January 9, 2020, Defendant Zhou (as "Joe Martin"), desperate to continue the fraud scheme, offered to "pay [Stamoulis] double" to stay in the case, and claimed he "funded (sic) ANBANG insurance and ANBANG is our trademarks both in US and China, it's my Chinese name."

138.    On January 10, 2020, Anbang Insurance Group submitted a Motion for Default Judgment in the Chancery Court action, as no successor counsel for petitioners had entered an appearance as directed by the court.  The Chancery Court entered a Default Judgment in Anbang Insurance Group's favor on January 15, 2020, in which it declared that none of the sham arbitration awards or judgments had been entered, confirmed or deemed confirmed by the Chancery Court. Accordingly, on January 21, 2020, the Delaware Superior Courts, acting as directed by the Chancery Court's January 15, 2020 Default Judgment (and as foreshadowed by the previous Delaware attorney), vacated the judgments in the six actions Stamoulis filed for Defendants "pursuant to Superior Court Rule 60(b)(3) (fraud)."

139.    On April 14, 2020, Anbang Insurance Group moved to compel petitioners in the Chancery Court action to produce the fictitious DRAA Agreement.  The Court granted the motion the same day, directing attorney Stamoulis to produce a copy of the DRAA Agreement to Anbang Insurance Group within one calendar day.  Despite the order, "Mike Martin" emailed Stamoulis on April 14 that he was not authorized to produce the DRAA Agreement.  Stamoulis responded that due to the Court's order, he had no choice, and was required to produce it.  "Mike Martin" continued his refusal to authorize the disclosure, emailing Stamoulis that he "can not [sic] produce the agreement to the court tomorrow," and "you can not [sic] make any production to any body [sic] or pay 270 billion serious anti-leak penalties."  Stamoulis produced the sham document, however, and Plaintiffs and their counsel were finally able to obtain it and translate it.

140.    On April 24, 2020, the Chancery Court also granted Anbang Insurance Group's motion to compel the production of communications between the two Delaware attorneys and their clients relating to their engagements.   The Court order noted that "the current circumstances warrant application of the crime-fraud exception to the attorney-client privilege.   As explained in Dajia's motion, there is ample evidence to believe that Petitioners committed a fraud on Dajia and on the court."

141.    On June 10, 2020, Anbang Insurance Group moved for an order dismissing the Chancery Court action with prejudice.   The Chancery Court entered a Final Order and Judgment by Default on July 2, 2020.   As it had done in the January 15, 2020 Order, the Chancery Court again declared that none of Defendants' sham arbitration Awards or judgments had been entered, confirmed, or deemed confirmed by the Chancery Court.   It also enjoined Defendants and their agents from representing that they had obtained a judgment from the Delaware court, "making any further filings in any court related to any purported judgment obtained from this Court," or representing to any court or person that it held title to any of Plaintiffs' properties as a result of Defendants' fraudulent filings in the Delaware courts.   The Order also directed the Office of Disciplinary Counsel to review the conduct of the two Delaware attorneys and of Steven Nielsen on behalf of Defendants.

### c)    Defendants Attempt to Prolong the Litigation

142.    With the fraud exposed, Defendants nonetheless attempted to prolong the Delaware litigation.   Three separate appeals of the July 2, 2020 Chancery Court Order were initiated in Delaware Supreme Court.

143.    On July 28, 2020, Defendant Zhou filed the first appeal, as "Andy Bang," on behalf of petitioners: *World Award Foundation Inc. v. Anbang Ins. Grp. Co. Ltd.*, No. 250,2020.  A week later, on August 3, 2020, Defendant Yan Zhao filed an Amended Notice of Appeal in the same action purportedly to correct a formatting issue.

144.    In the Amended Notice, Defendant Yan Zhao claimed to be "Director of the Amer Group LLC."  "Andy Bang" (Zhou) submitted a pro se declaration in this appeal on October 6, 2020, which had been mailed from Tiburon, California, and in which he claimed to own "100% of the shares of common stocks of the AN BANG GROUP LLC, and holding 5.1% of the shares of the common

stocks of the Amer Group LLC and of the AB Stable Group LLC." Zhou claimed that "at least 210 possible candidates of DE counsels" had reviewed petitioners' case, and that after providing case materials to numerous attorneys, none were willing to take on the representation (a clear indication that the appeal was meritless and the underlying action fraudulent). The Delaware Supreme Court dismissed the appeal on October 15, 2020 on the grounds that corporations may only appear in Delaware court "through an agent duly licensed to practice law."

145.    Defendant Yan Zhao also filed a second appeal on behalf of petitioners, captioned *World Award Foundation Inc. v. Anbang Ins. Grp. Co. Ltd.*, No. 254, 2020. In an affidavit dated October 6, 2020, Yan Zhao claimed to be "Director of the Board for the World Award Foundation Inc. and of An Bang Group LLC. I am the Director of the Board and holding 5.1% of the shares of common stocks of the Amer Group LLC and of the AB Stable Group LLC." Like Defendant Haibin Zhou, Defendant Yan Zhao claimed to have considered "at least 5 dozens of possible candidates of DE counsels," none of which were willing to take on the representation.

146.    Defendants Haibin Zhou and Yan Zhao also filed two additional *pro se* appeals of the Order of the Delaware Superior Court in *World Award Foundation v. An Bang Insurance Grp. C. Ltd.*, C.A. No. N19J-5055, dated July 8, 2020, closing the action, which consolidated the other Superior Court actions opened by Stamoulis on behalf of petitioners. *World Award Foundation v. An Bang Insurance Grp. C. Ltd.*, Nos. 244,2020 and 255,2020 were filed on August 7, 2020, and were both dismissed in October 2020 when no Delaware counsel would appear on behalf of appellants.

147.    On August 12, 2020, Defendant Zhou's daughter Tiange Zhou, who was then 22 years old, also filed a third *pro se* appeal of the Chancery Court's July 2, 2020 Order and a third *pro se* appeal of the Superior Court's July 8, 2020 Order. *World Award Foundation Inc. v. Anbang Ins. Grp. Co. Ltd.*, No. 265,2020, and *World Award Foundation v. An Bang Insurance Grp. C. Ltd.*, No. 264,2020. The Delaware Supreme Court dismissed both appeals as untimely on September 21, 2020.

148.    The Delaware Supreme Court dismissed the last of the appeals on October 26, 2020, on the ground that the Entity Defendants, all being corporations, could only appear in Delaware court "through an agent duly licensed to practice law."

149.    Defendants' sham litigation in California and Delaware, described above, caused

Plaintiffs to suffer injuries in the form of attorney's fees and costs incurred to invalidate the various arbitration awards that Defendants had sought to enforce.

**D.      The Failed Mirae Transaction**

150.    The sham litigation also caused Plaintiffs to suffer by undermining the sale of certain properties to Mirae, a South Korean conglomerate.

151.    In September 2019, an affiliate of Mirae agreed to purchase Strategic Hotels & Resorts and its portfolio of hotel properties from Plaintiff AB Stable VIII.   The purchase price was approximately $5.8 billion.

152.    As a condition of the purchase agreement, in late 2019 AB Stable VIII commenced the above-referenced quiet title actions in multiple California counties to clear the deeds on the California properties subject to the agreement.   Although this quiet title litigation was fully successful, as described above, in December 2019 Plaintiffs also discovered Defendants' new efforts to manufacture and enforce the fraudulent arbitration awards in Delaware and Alameda County.   Plaintiffs' efforts to obtain preliminary injunctions in Delaware and Alameda County preventing the enforcement of these awards were also successful.   Mirae learned of this new litigation in February, and their counsel discussed it with counsel for Dajia.   Nonetheless, title insurers for the subject hotel properties, relying on the false DRAA and ongoing sham litigation, declined to issue title insurance for the properties without exceptions for the claims based on the DRAA Agreement.

153.    A notice was served on Mirae scheduling the close of the transaction for April 2020, but Mirae refused to go through with the purchase of Strategic Hotels & Resorts.   AB Stable VIII brought an action in the Delaware Court of Chancery to enforce the purchase agreement.   Expedited discovery and a trial ensued.   Among the issues raised by Mirae were the potential impact on title insurance for the properties of the DRAA Agreement, the sham arbitration awards, and the litigation described above. Accordingly, the scope and cost of the Mirae litigation greatly expanded due to Defendants' fraud schemes.   Increased costs in the Mirae litigation attributable to the Defendants' fraudulent schemes included the costs of defending numerous depositions and searching for and producing documents relating to the history of Defendants' fraud schemes, the discovery and investigation thereof, and the responses thereto.   Such costs also included the retention, deposition, and trial testimony of a forensic

- 50 -

document examiner who provided trial testimony concerning the falsity of the DRAA Agreement.

154.    Following a trial in August of 2020, the court ultimately ruled on November 30, 2020, that Mirae could not be compelled to close the transaction—partly because the title insurers insisted on an exception relating to the DRAA Agreement sham claims, and a condition of Mirae's obligation to purchase the properties was that the latter receive title insurance *without* exceptions.

155.    The Defendants' fraudulent conduct vastly expanded the scope and expense of the Mirae litigation, causing Plaintiffs to suffer injury in the form of increased attorney's fees, litigation and investigatory costs in the course of that litigation attributable to that fraudulent conduct.

### E.    The Sham DC Litigation

156.    While the harm to Plaintiffs from the above-described efforts was still unfolding, Defendants began the next phase of their fraudulent scheme.  With the Delaware cases dismissed and no Delaware counsel willing to represent them, Defendants immediately moved to another forum, obtaining new counsel and commencing new litigation to harass Plaintiffs and attempt to cloud title to their properties.  In October 2020, just three days after the last of the Delaware appeals was dismissed, the Andy Bang Enterprise initiated a sham legal action in federal court in Washington, D.C.; that action carries on to this day despite numerous rulings against Defendants including sanctions against the Law Office of Ning Ye.

157.    On October 29, 2020, Defendant Yan Zhao and Defendant Entities Amer Group LLC, An Bang Group LLC, AB Stable Group LLP, and World Award Foundation Inc. (the "DC Plaintiffs"), with assistance from Ning Ye of Defendant Law Office of Ning Ye, filed a Verified Complaint in the U.S. District Court for the District of Columbia against Plaintiff AB Stable VIII and a hodgepodge of other individuals and entities, including Vice Chancellor Travis Laster, the Delaware Judge who had ruled against Defendants in the Delaware Chancery Court action; the then-Premier of the People's Republic of China; a prison facility in Shanghai, China; and several other Chinese political officials and entities.

158.    In their complaint, the DC Plaintiffs claimed they were owners of the 15 luxury hotels indirectly owned by Plaintiffs and that they were the victims of a purported international conspiracy between the Delaware Judge, Plaintiffs, and various Chinese politicians to rob the DC Plaintiffs of their

ownership interests in the properties.  Among other outlandish allegations, the DC Plaintiffs claimed that they were "co-founders, capital investigators, [and] shareholders" of "one of China's most miracle private business[es]," worth "approximately half [sic] trillion U.S. dollars"; that the Chinese Government, "an illegal Mafioso expropriator by organized violence," planned to engineer an illegal takeover of the company; and that the Delaware Court of Chancery's rulings in the Chancery Action constituted an "unauthorized, baseless, and abusive extension activist type of accomplice to aiding and abetting Chinese Communist Party's anti-humanity crimes in violation law of nations and of jus cogens [sic]."  The complaint claimed that this "grand conspiracy of multimillion dollar transaction tax fraud and billion dollar income tax frauds" [sic] had allowed "Dajia and Dajia's foreign communist masters to criminally evade tax" and "generously hand[ed] US$900 billions [sic] into the dirty bloody hands of the Chinese communist dictators whose intercontinental Blastic [sic] Missiles at Mark VII speed . . . bearing ten nukes each are aiming at our country covering all the landmass."  The DC Plaintiffs claimed that Vice Chancellor Laster, the Delaware Judge, should himself be liable for $2.5 million in punitive damages arising from the orders he issued, which the DC Plaintiffs claimed were a part of "his role in civil conspiracy helping, attempted to help grand tax frauds and tax evasion likely involving felony proceeds of multibillion dollars regarding Defendant Communist expropriators' mere income from 20 U.S. properties from assisted changing hands for free from their lawful private owners into the dirty bloody hands of the Chinese communist expropriators" (errors in original).

159.    The complaint was followed by a string of equally frivolous court filings, filled with false allegations, each one forcing Plaintiffs to expend resources to answer, correct, and undo.  In early January 2021, the DC Plaintiffs filed a sham temporary restraining order and an "emergency motion" seeking to prevent AB Stable VIII from taking any action with respect to 15 properties it indirectly owned.  The court denied both requests and later dismissed AB Stable VIII from the DC Action, in an order dated August 27, 2021.  Not to be deterred, the DC Plaintiffs later filed a baseless motion for reconsideration of the August 27, 2021 order, which the court denied.  When this tack failed, in early October 2022, the DC Plaintiffs filed a baseless appeal of AB Stable VIII's dismissal and the court's prior orders.  That appeal is still pending.  *See Yan Zhao, et al. v. Keqiang Li, et al.*, No. 22-7138 (D.C. Cir.).

Gibson, Dunn & Crutcher LLP

160.     Although he is not one of the named DC Plaintiffs, Defendant Zhou is directing their conduct in the DC Action and is funding that action on behalf of the Andy Bang Enterprise.  In early 2021, a check for $30,000, dated February 27, 2021, was made payable to an organization purportedly controlled by Defendant Yan Zhao and transmitted to New York.  The memo line of the check reads "For Ye's other expenses."  The check (see below) is written on the account of Defendant World Award Foundation, and bears the address of the Tiburon Mail Service drop dox used by World Award Foundation and other entities affiliated with defendant Zhou.



161.     The signature on the check appears to be that of Defendant Haibin Zhou, based on its similarity to the signature for "Hai Bin Zhou" that appears on Delaware incorporation documents for some of the Defendant Entities (example below).



162.     The above check for $30,000 was put into the public record as a result of a lawsuit filed in March 2021 by Defendant Yan Zhao against Bank of America, a case in which Yan Zhao was also represented by Ning Ye.  *Yan Zhao, et al, v Bank of America, et al*, 707611/2021 (Supreme Court, County of Queens).  According to court filings in that case, the check had become stuck in a malfunctioning Bank of America ATM.  Defendant Yan Zhao and Ning Ye sued Bank of America on this basis, alleging that Bank of America was conspiring with the Chinese Communist Party and

1    seeking $3 million in damages and an order shutting down 16,000 Bank of America ATM machines.

2    163.    As a result of Defendants' frivolous filings in the DC Action, the court in that case

3    issued an order threatening to impose sanctions on the DC Plaintiffs and their attorney Ning Ye.  The

4    court's order stated that "[t]here is reason to believe that through this suit [the DC] Plaintiffs are

5    peddling a fraud" and "perpetuating a fraud on the court," and that the documents on which their claims

6    of ownership were based "appear to be fraudulent."  Nonetheless, Defendants' sham frivolous litigation

7    caused and continues to cause Plaintiffs to suffer injury in the form of attorney's fees and costs incurred

8    to protect its rights, defend against the litigation, and remove the cloud on title of its properties.

9        **F.    The Sham *Lis Pendens* Filings**

10   164.    Eight months after they had commenced the sham DC Action, in June 2022, Defendants

11   started on the next phase of their scheme: filing sham *lis pendens*, or public notices of legal actions

12   affecting real-estate property, in an attempt to cloud title on Plaintiffs' properties and prevent the sale

13   or refinancing of those properties or the sale of condominiums in one of the properties.

14       **1.    *Lis Pendens* Notice Filing in District of Columbia**

15   165.    On June 17, 2022, nearly a year after AB Stable VIII had been dismissed in the DC

16   Action, the DC Plaintiffs filed a document in the case titled "*Lis Pendens* Notice," in which they

17   threatened to record *lis pendens* notices concerning three properties indirectly owned by Plaintiffs:  the

18   Four Seasons Hotel in Washington, D.C.; the Waldorf Astoria Hotel in New York City; and the Corning

19   Glass Building at 717 Fifth Avenue in New York City (the "Corning Glass Building").  This filing

20   attached a "cease and desist" letter addressed to AB Stable VIII and others which stated that "[n]o

21   Defendants in this instant case shall be permitted to sell or dispose" of the properties listed in the "*Lis

22   Pendens* Notice."  Although it had already been dismissed from the case, AB Stable VIII was forced

23   to respond to and correct the baseless "Notice."

24   166.    Before the court in the DC Action could rule on AB Stable VIII's request, however, on

25   July 14, 2022, Defendant Law Office of Ning Ye, on behalf of Defendants Yan Zhao, Amer Group

26   LLC, An Bang Group LLC, AB Stable Group LLP, and World Awards Foundation Inc., sent a letter

27   to a bank that sometimes financed transactions involving Plaintiffs' properties, in which Ning Ye

28   falsely represented that Yan Zhao and the preceding entities owned 15 of Plaintiffs' real estate

Gibson, Dunn &
Crutcher LLP

properties, in an attempt to further harass Plaintiffs and hold up potential sales or financings of the properties.  In the letter, Defendant Law Office of Ning Ye also falsely stated that Plaintiffs were "an integral part" of an "illegal expropriation Mafioso clique" in "acquiring these properties using state organized violence without paying fair market value to their lawful owners under the due process of law."

167.    Four days later, on July 18, 2022, the DC Plaintiffs filed a second document titled "*Supplemental Lis Pendens* Notice," which stated that "recordation of the *lis pendens* has started" and which attached the letter addressed to the lender.  Once again, AB Stable VIII was forced to respond and correct this frivolous filing.

168.    On October 11, 2022, the court in the DC Action issued an order striking the DC Plaintiffs' sham *lis pendens* "Notices," enjoining the DC Plaintiffs from recording any other *lis pendens* notices without leave of court, and ordering the DC Plaintiffs and Ning Ye to pay AB Stable VIII's attorneys' fees for having to respond to the notices.  The court also dismissed the district court case with prejudice and referred Ning Ye to the District Court's Committee on Grievances.  In response, Ning Ye filed a letter with the court in which he threatened that he would "find one way or another to pursue" Plaintiffs, including by filing additional litigation, and not necessarily in the United States.  As noted above, the DC Action is ongoing.

**2.    *Lis Pendens* Filing in New York**

169.    During this time period, and possibly as a result of its failures in the DC Action, the Andy Bang Enterprise moved to yet another forum: New York.

170.    On July 21, 2022, Defendant Yan Zhao, through Ning Ye of Defendant Law Office of Ning Ye, improperly recorded notices of pendency in New York for three properties: the JW Marriott Essex House Hotel at 160 Central Park South in New York City (the "Essex House"); the Corning Glass Building; and the Waldorf Astoria Hotel.  Defendant Yan Zhao and Ning Ye did so despite the fact that, at the time, there was no action concerning any title, security, or other ownership interest in the three properties pending in New York State that asserted a claim against the owners of these three properties or their affiliates which concerned any title, security, or other ownership interest in the three properties.

Gibson, Dunn & Crutcher LLP

171.   Once again, Plaintiffs were forced to expend funds to correct and undo these sham filings.  After learning of the notices of pendency on the Essex House and Corning Glass Building, in late July 2022 Plaintiff AB Stable VIII and its affiliates AB Stable VI and SHR Essex (the "NY Plaintiffs") filed a lawsuit in New York State court against the Defendant Law Office of Ning Ye and Defendant Yan Zhao (the "NY Defendants"), seeking to cancel those notices and stop Ning Ye and Defendant Yan Zhao from filing further notices of pendency.  A hearing to resolve this action was scheduled late August 2022.

172.   One day before the scheduled hearing, however, on August 21, 2022 Ning Ye filed another, separate lawsuit in New York State court on behalf of the DC Plaintiffs.  In this new action, the DC Plaintiffs sought another declaration—now from a New York court—that the DC Plaintiffs were lawful owners of the Essex House and the Corning Glass Building, once again based on the existence of the fictitious DRAA Agreement.

173.   The complaint for the second New York lawsuit was never, or at least has yet to be, served.  Instead, on August 22, 2022, the court in the first New York action brought by the NY Plaintiffs and their affiliates ordered that the notices of pendency for the Essex House and Corning Glass Building be cancelled.  The court also barred the NY Defendants from filing any further notices of pendency or proceedings related to the notices of pendency.  Approximately one month later, on September 15, 2022, the court issued a second order cancelling the notice of pendency for the Waldorf Astoria—the existence of which Plaintiffs had only later discovered through Plaintiffs' own investigation.  The NY court also awarded thousands of dollars in attorneys' fees as sanctions against Defendants Yan Zhao and the Law Office of Ning Ye, in part because of the "wholly frivolous nature of the Waldorf Notice" and their efforts to prolong the litigation for, in essence, no reason other than harassing the NY Plaintiffs.

174.   On September 21, 2022, Defendant Law Office of Ning Ye filed a notice of appeal, which is still pending.  *See AB Stable VIII LLC et al v. Law Office of Ning Ye, Esq., et al.*, No. 2022-04774 (N.Y. App. Div.).

175.   Defendants' sham litigation in the District of Columbia and New York, including sham *Lis Pendens* filings, caused and continues to cause Plaintiffs to suffer injury in the form of attorney's

- 56 -

Gibson, Dunn & Crutcher LLP

1  fees and costs incurred to protect its rights and remove the cloud on title of its properties.

2  III.    SUMMARY OF RICO ALLEGATIONS AND HARM TO PLAINTIFFS

3        A.    RICO Predicate Acts

4        176.    As set forth in the foregoing, the leaders of the Andy Bang Enterprise devised a scheme

5  to defraud Plaintiffs, and from a date unknown to Plaintiffs but not later than May 2018 through the

6  present, the Defendants carried out the scheme through the use of false deeds, forged documents, and

7  sham litigation, in the manner and means described above.

8        177.    In furtherance of that scheme to defraud, the Defendants conducted the affairs of the

9  Andy Bang Enterprise through numerous predicate acts of racketeering (18 U.S.C. § 1961(1)), which

10  are described below:

11           1.    Mail Fraud in Violation of 18 U.S.C. § 1341

12        178.    Defendants violated 18 U.S.C. § 1341 by devising a scheme to defraud Plaintiffs and to

13  obtain money and property from them by means of material false pretenses, misrepresentations, and

14  promises, and by causing items to be sent and/or received via U.S. mail or commercial interstate carriers

15  for the purpose of executing and attempting to execute the scheme.  Specifically:

16           a.    On or about September 17, 2018, Defendants Zhou, Belitskiy, and SHR Group

17  caused a copy of the false grant deed for the Westin St. Francis San Francisco to be sent from the San

18  Francisco County Clerk's office in the Northern District of California to the address of record of

19  Defendant SHR Group in Delaware, by filing a copy of that false grant deed with the San Francisco

20  County Clerk on that date.

21           b.    On or about September 19, 2018, Defendants Zhou, Belitskiy, and SHC Group

22  caused a copy of the false grant deed for the Ritz-Carlton Half Moon Bay to be sent from the San Mateo

23  County Clerk's office in the Northern District of California to the address of record of Defendant SHC

24  Group in Delaware, by filing a copy of that false grant deed with the San Mateo County Clerk on that

25  date.

26           c.    On or about October 12, 2018, Defendants Zhou, Belitskiy, and SHR Group

27  caused a copy of the false grant deed for the Four Seasons Silicon Valley to be sent from the San Mateo

28  County Clerk's office in the Northern District of California to the address of record of Defendant SHR

Gibson, Dunn &
Crutcher LLP

Group in Delaware, by filing a copy of that false grant deed with the San Mateo County Clerk on that date.

          d.      On or about October 30, 2018, Defendants Zhou, and Belitskiy caused a copy of the false grant deed for the Montage Laguna Beach to be sent from the Orange County Clerk's office in California to the address of record of SHR Holding Group in Delaware, by filing a copy of that false grant deed with the Orange County Clerk on that date.

          e.      On or about October 31, 2018, Defendants Zhou, and Belitskiy caused a copy of the false grant deed for the Ritz-Carlton Laguna Niguel to be sent from the Orange County Clerk's office in California to the address of record of SHC Holdings Group in Delaware, by filing a copy of that false grant deed with the Orange County Clerk on that date.

          f.      On or about December 20, 2018, Defendants Zhou, and Belitskiy caused a copy of the second false grant deed for the Ritz-Carlton Laguna Niguel to be sent from the Orange County Clerk's office in California to the address of record of World Award Group LLC in Delaware, by filing a copy of that false grant deed with the Orange County Clerk on that date.

          g.      On or about December 20, 2018, Defendants Zhou, Belitskiy and Andy Bang LLC caused a copy of the second false grant deed for the Montage Laguna Beach to be sent from the Orange County Clerk's office in California to address of record of Defendant Andy Bang LLC in Delaware, by filing a copy of that false grant deed with the Orange County Clerk on that date.

          h.      On or about December 28, 2018, Defendants Zhou, and Belitskiy caused a copy of the false grant deed for the Loews Santa Monica Beach Hotel to be sent from the Los Angeles County Clerk's office in California to the address of record of Defendant SHC Holdings Group LLC in Delaware, by filing a copy of that false grant deed with the Los Angeles County Clerk on that date.

          i.      On or about September 24, 2019, Defendant Zhou, "Mike Martin" and attorney Steven Nielsen sent a letter from Marin County, in the Northern District of California, to Parcels, Inc. in Delaware, enclosing the sham default judgments and notice of appointment of arbitrators.

          j.      On or about November 30, 2019, Defendant Zhou, "Mike Martin," and Nielsen caused copies of "Final Awards" II and III to be mailed from Marin County, in the Northern District of California, to the People's Republic of China.

Gibson, Dunn &
Crutcher LLP

k.    On or about December 9, 2019, Defendant Zhou, "Mike Martin" and Nielsen caused a copy of a proposed Alameda County sister-state judgment to be mailed from Berkeley, in the Northern District of California, to the People's Republic of China.

l.    On or about December 30, 2019, "Mike Martin" sent via overnight courier from New York a copy of the forged "DRAA Agreement" to Stamoulis in Delaware.

m.    On or about January 6, 2020, Defendants Zhou and Amer Group caused a 13-page document containing photographs of receipts, package labels and USPS tracking information, to be mailed from the United States to China.

n.    On or about January 9, 2020, Defendants Zhou and World Award Foundation caused a similar 13-page document to be mailed from the United States to China.

o.    On or about October 6, 2020, Defendant Zhou, as "Andy Bang" mailed a *pro se* declaration from Marin County to Delaware in connection with the appeal of the dismissal of the sham Delaware filings.

p.    On or about February 27, 2021, Defendants Zhao and World Award Foundation sent a check for $30,000 by mail or interstate carrier from the Northern District of California to an entity under Defendant Yan Zhao's control and to Defendant Law Office of Ning Ye in New York.

q.    On or about November 3, 2021, Defendants Zhao and AB Stable Group LLC mailed the first page of the complaint in the DC Action from Marin County, in the Northern District of California, to Dajia Insurance Group in the People's Republic of China.

r.    On or around July 14, 2022, Defendant Law Office of Ning Ye, on behalf of Defendants Yan Zhao, Amer Group LLC, An Bang Group LLC, AB Stable Group LLP, and World Awards Foundation Inc., sent a letter to a bank in New York in which Ning Ye falsely represented that Yan Zhao and the preceding entities owned 15 of Plaintiffs' real estate properties.

**2.    Wire Fraud in Violation of 18 U.S.C. § 1343**

179.    Defendants violated 18 U.S.C. § 1343 by devising a scheme to defraud Plaintiffs and to obtain money and property from them by means of material false pretenses, misrepresentations, and promises, and by causing communications to be transmitted by means of wire in interstate commerce for the purpose of executing and attempting to execute the scheme.  Specifically:

Gibson, Dunn &
Crutcher LLP

a.     On July 19, 2019, Defendants Zhou, World Award Foundation, Amer Group, An Bang Group, AB Stable Group, and attorney Steven Nielsen, in the Northern District of California, submitted the July 19th Petition to the Delaware Court of Common Pleas via File & ServeExpress, a web-based electronic document transfer application.  The July 19th Petition falsely represented that Anbang Insurance Group and certain of the Entity Defendants were parties to a fictitious agreement.

b.     On August 5, 2019, Defendant Zhou, in the Northern District of California, emailed a verification which falsely presented "Andy Bang" as a signatory, to an attorney in Delaware. Upon information and belief, that Delaware attorney used this scanned pdf as the verification supporting the August 5, 2019 Petition.

c.     On August 5, 2019, Defendants Traub, World Award Foundation, Amer Group, An Bang Group, and AB Stable Group, in the Northern District of California, sent a Delaware attorney an email in which Traub stated that he would hand-deliver eight "notarized copies" of documents to the attorney and falsely represented that these documents "comprise[d]" a "case" supporting Zhou, as Andy Bang, against Plaintiffs under the "DRAA."  Traub also misleadingly described himself as a "Consultant to Andy Bang" without disclosing that "Andy Bang" is a fictional alias of Haibin Zhou.

d.     On August 5, 2019, Defendant Traub, in the Northern District of California, sent a Delaware attorney a second email in which Traub told the attorney the address of Da Hua Bang Investment Group Co., Ltd., the Chinese company affiliated with Zhou, and falsely represented that this entity was in fact a respondent in an arbitration involving Plaintiffs, when there was no such arbitration and the arbitration awards were fake.

e.     On or about September 10, 2019, Defendant Zhou, as "Joe Martin," spoke with a Delaware attorney by telephone from the Northern District of California and falsely stated, among other things, that "Andy Bang" had founded Anbang Insurance Group in China in 2000; that the purported "DRAA Agreement" had been drafted by the son of a "5 star general" in China and the document was executed May 15, 2017; that Anbang Insurance Group signed a "DRAA Statement of Claim" on January 20, 2019; that Da Hua Bang Investment Group had selected Guanghui Dai as an "arbitrator"; and that Guanghui Dai had "drafted" the July Sham Awards.

f.     On October 23, 2019, "Mike Martin" emailed to attorney Stamoulis in Delaware

Gibson, Dunn &
Crutcher LLP

a copy of an engagement letter for Defendants World Award Foundation, Amer Group, An Bang Group, and AB Stable Group, that had been scanned at a UPS Store in Corte Madera, California, located in Marin County.  The engagement letter included a forged signature for the fictitious alias "Mike Martin" as "V.P.", dated October 20, 2019.

g.       On October 23, 2019, "Mike Martin," in California, emailed attorney Stamoulis in Delaware and Defendant Zhou (as "Joe Martin"), a scanned copy of the First Sham Preliminary Award, that had been scanned at a UPS Store in Corte Madera, California, located in Marin County, and asked him to file it in Superior Court, telling him they "have another big DRAA for you."

h.       On October 31, 2019, "Mike Martin" sent attorney Stamoulis in Delaware and Defendant Zhou (as "Joe Martin"), an email that forwarded another email from Defendant Zhou (as "Joe Martin," using an email account named for Defendant World Award Foundation) and that attached the Second Sham Preliminary Award and that referred to the latter as an "award."  Stamoulis used the attached Second Sham Preliminary Award as the purported second arbitration award.

i.        On November 5, 2019, "Mike Martin" sent attorney Stamoulis in Delaware an email that attached the Third Sham Preliminary Award and that referred to the latter as an "award." Stamoulis used the attached Third Sham Preliminary Award as the purported third arbitration award.

j.        On July 28, 2020, Defendant Zhou filed from California, via file and serve in Delaware, an "Appeal" of the Delaware Chancery Action as "Andy Bang."

k.       On October 29, 2020, Defendants Yan Zhao and Law Office of Ning Ye, using the CM/ECF filing system from New York, caused a complaint to be electronically filed in the District of Columbia which falsely stated, among other things, that "Andy Bang" was a "co-founder" of Anbang Insurance Group and that Andy Bang and Anbang Insurance Group had entered into the purported "DRAA Agreement" on May 15, 2017.

l.        On January 4, 2021, Defendants Yan Zhao and Law Office of Ning Ye, using the CM/ECF filing system from New York, caused an "Ex Parte Petition" for a temporary restraining order, as well as an accompanying signed affidavit by Ning Ye, to be electronically filed in the District of Columbia; the TRO petition and accompanying affidavit falsely stated, among other things, that a purported "2017 DRAA Blanket Agreement" had "granted" the properties owned by Plaintiffs to

- 61 -

Defendants World Award Foundation, Amer Group, An Bang Group, and AB Stable Group.

### 3.    Attempted Extortion in Violation of the Hobbs Act, 18 U.S.C. § 1951

180.    Defendants Zhou, Traub, World Award Foundation, Amer Group, An Bang Group, and AB Stable Group, violated 18 U.S.C. § 1951 by attempting or conspiring to obtain property from Plaintiffs, with their consent, induced by the wrongful use of sham litigation in Alameda County, in the Northern District of California and elsewhere.  The wrongful conduct, in or about December 2019, by Defendant Zhou and Defendants Amer Group LLC, An Bang Group LLC, AB Stable Group LLP, and World Award Foundation Inc. was intended to induce, and did induce, a reasonable fear in Plaintiffs that Defendants would, among other things: (1) continue to spread false and misleading information to third parties, including by, among other things, disseminating the forged "DRAA Agreement" and sham arbitration awards and baselessly dispute Plaintiffs' property rights, unless and until Plaintiffs "settle" the sham lawsuits or otherwise make payments to the Defendants; and (2) continue to file and pursue sham lawsuits against Plaintiffs based on forged documents.  As described herein, these actions created a reasonable fear on the part of Plaintiffs, including fear of economic loss. Accordingly, Defendants unlawfully obstructed, delayed, and affected—and attempted to obstruct, delay, and affect—commerce as that term is defined in 18 U.S.C. § 1951, by extortion, as that term is defined in § 1951, in that Defendants attempted to induce Plaintiffs to pay money through the use of actual or threatened fear—including fear of economic harm.

### 4.    Attempted Extortion in Violation of California Penal Code § 524

181.    Defendants Zhou, World Award Foundation, Amer Group, An Bang Group, and AB Stable Group, violated California Penal Code Sections 518, 519, and 524 by attempting to extort Plaintiffs by attempting to obtain property from Plaintiffs, with their consent, induced by the wrongful use of sham litigation in Alameda County, in the Northern District of California and elsewhere.  The wrongful conduct, in or about December 2019, by Defendant Zhou and Defendants Amer Group LLC, An Bang Group LLC, AB Stable Group LLP, and World Award Foundation Inc. was intended to induce, and did induce, a reasonable fear in Plaintiffs that Defendants would, among other things: (1) continue to spread false and misleading information to third parties, including by, among other things, disseminating the forged "DRAA Agreement" and sham arbitration awards and baselessly dispute

- 62 -

Plaintiffs' property rights, unless and until Plaintiffs "settle" the sham lawsuits or otherwise make payments to the Defendants; and (2) continue to file and pursue sham lawsuits against Plaintiffs based on forged documents.  As described herein, these actions created a reasonable fear on the part of Plaintiffs, including fear of economic loss.  Accordingly, Defendants, with the wrongful use of fear as defined in California Penal Code Section 519, attempted to induce Plaintiffs to pay money through the use of actual or threatened fear—including fear of unlawful injury to Plaintiffs property.

**B.     Harm to Plaintiffs**

182.     As a direct, proximate, and reasonably foreseeable result of these violations of 18 U.S.C. § 1962(c), Plaintiffs and their affiliated entities have suffered and continue to suffer significant injuries, including but not limited to:

a.     attorneys' fees and costs that Plaintiffs incurred in instituting the four quiet title actions to void the fraudulent grant deeds in California, and in responding to Defendants' fraudulent misrepresentations and omissions in the sham Delaware Litigation and in vacating the judgments in the sham enforcement actions in Delaware and Alameda County, California;

b.     attorneys' fees and costs that Plaintiffs incurred in responding to Defendants' fraudulent misrepresentations and omissions in the sham DC Litigation, in instituting the New York *lis pendens* action to cancel the New York notices of pendency, and in litigating ongoing sham cases and appeals in the District of Columbia and New York;

c.     attorneys' fees and costs and additional investigation and administrative costs that Plaintiffs incurred in litigating facts in the course of the Mirae litigation that related entirely or in large part to Defendants' fraudulent schemes, which was proximately causes by Defendants' sham DRAA Agreement, the sham arbitrations, and the sham litigation in Delaware and Alameda County, California;

d.     attorneys' fees, increased liabilities and costs associated with sales and attempted sales, and refinancing and attempted refinancing, of the luxury hotels and commercial property owned by Plaintiffs and their subsidiaries; and

e.     additional injury resulting from interference with business transactions, business interruption, internal costs, and reputational harm.

Gibson, Dunn &
Crutcher LLP

Plaintiffs' injuries have totaled millions of dollars to date, and the injuries are continuing.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Violations of RICO, 18 U.S.C. § 1962(c), Against all Defendants)

183.    Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

184.    At all relevant times, Plaintiffs were "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

185.    At all relevant times, Defendants Haibin Zhou, Daniil Belitskiy, David Traub, Yan Zhao, Law Office of Ning Ye, World Award Foundation, Amer Group, An Bang Group, AB Stable Group, Andy Bang LLC, SHC Group, and SHR Group were "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

186.    At all relevant times, the Andy Bang Enterprise constituted a racketeering enterprise within the meaning of 18 U.S.C. § 1961(4).  The Andy Bang Enterprise was comprised of myriad individuals and entities, all associated in fact as part of the Andy Bang Enterprise, including but not limited to the Individual Defendants and Entity Defendants named herein.  At all relevant times, the Andy Bang Enterprise was engaged in, and the activities of the Andy Bang Enterprise affected, interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c).

187.    As alleged herein, the Andy Bang Enterprise participants, including Defendants and each of them, engaged in acts in the United States to further the goals of their criminal enterprise, in violation of U.S. law.

188.    As described herein, Defendants engaged in mail fraud in violation of 18 U.S.C. § 1341 by devising a scheme to defraud Plaintiffs and to obtain money or property by means of material false pretenses and representations, and knowingly causing the use of the United States mails and carriers in interstate and foreign commerce for the purpose of executing and attempting to execute the scheme. Each use of the mails or interstate or common carrier in executing or attempting to execute the fraud scheme constitutes a separate act of mail fraud and thus a predicate act for purposes of RICO.

189.    Defendants engaged in wire fraud in violation of 18 U.S.C. § 1343 by devising a scheme

Gibson, Dunn &
Crutcher LLP

to defraud Plaintiffs and to obtain money or property by means of material false pretenses and representations, and knowingly causing the use of interstate communications by means of wire for the purpose of executing and attempting to execute the scheme. Each communication by means of wire in interstate or foreign commerce for purpose of executing or attempting to execute the fraud scheme constitutes a separate act of wire fraud and thus a predicate act for purposes of RICO.

190.    Defendants engaged and conspired to engage in extortion in violation of 18 U.S.C. § 1951:

a.    At all relevant times, Plaintiffs were engaged in interstate and foreign commerce and in an industry that affects interstate and foreign commerce.

b.    Defendants' wrongful conduct was intended to induce, and did induce, a reasonable fear in Plaintiffs that Defendants will, among other things: (1) continue to spread false and misleading information to third parties, including by, among other things, disseminating the forged DRAA Agreement and arbitration awards and baselessly disputing Plaintiffs' property rights, unless and until Plaintiffs "settle" the sham lawsuits or otherwise give in to Zhou's baseless demands; and (2) continue to file and pursue sham lawsuits against Plaintiffs based on forged documents. As described herein, these actions have created a reasonable fear on the part of Plaintiffs, including fear of economic loss.

c.    Accordingly, Defendants have unlawfully obstructed, delayed, and affected—and attempted to obstruct, delay, and affect—commerce as that term is defined in 18 U.S.C. § 1951, by extortion, as that term is defined in § 1951, in that Defendants attempted to induce Plaintiffs to pay money through the use of actual or threatened fear—including fear of economic harm.

191.    Defendants engaged and conspired to engage in the above violations of U.S. law in order to implement the objectives and accomplish the unlawful purposes of the Andy Bang Enterprise as set forth herein, and thereby engaged in predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1)(B).

192.    Each of the Defendants conducted or participated, directly or indirectly, in the conduct of the affairs of the Andy Bang Enterprise through a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), consisting as applicable of multiple

- 65 -

acts of mail fraud, wire fraud, and/or extortion, as specified herein.  Each of the Defendants engaged in two or more predicate acts of racketeering.

193.    As a direct and proximate result of RICO violations by the Defendants of 18 U.S.C. § 1962(c), Plaintiffs have suffered, and will continue to suffer, damages in an amount to be determined at trial.

194.    Plaintiffs have been injured in their business or property by reason of each such Defendant's violations and, pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), are thereby entitled to recover threefold the damages they have suffered, together with their costs of suit and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Conspiracy to Commit RICO, 18 U.S.C. § 1962(d), Against all Defendants)

195.    Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

196.    Defendants have unlawfully, knowingly and willfully combined, conspired, and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

197.    Upon information and belief, Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.  This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

198.    Upon information and belief, Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Andy Bang Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

199.    Each Defendant knew about and agreed to facilitate the Andy Bang Enterprise's scheme to obtain money or property from Plaintiffs.  It was part of the conspiracy that Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Andy Bang Enterprise, including the acts of racketeering alleged herein.

Gibson, Dunn & Crutcher LLP

200.   As a direct and proximate result of Defendants' conspiracy, the acts of racketeering activity of the Andy Bang Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have suffered significant injuries to their business and property including, but not limited to: funds spent defending against Defendants' fraudulent misrepresentations and omissions, and frivolous lawsuits; harm to their reputation and business interests as a result of the continuous frivolous litigation; and the excess cost of litigating Defendants' fraudulent conduct in the course of the Mirae litigation.

201.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus attorneys' fees and costs from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants and seek the following relief:

a.   An award of compensatory damages, the amount of which is to be determined at trial;

b.   Treble damages pursuant to 18 U.S.C. § 1964(c);

c.   Attorney's fees pursuant to 18 U.S.C. § 1964(c);

d.   Prejudgment interest at the legal rate of the foregoing sums; and

e.   Such other relief as may be deemed appropriate and just by the Court.

DATED: March 5, 2023                    GIBSON, DUNN & CRUTCHER LLP


By: */s/ Benjamin Wagner*
Benjamin Wagner, Bar No. 163581
Winston Y. Chan, Bar No. 214884
Kevin J. White, Bar No. 314159
Hazel Verdin, Bar No. 333795

*Attorneys for Plaintiffs Anbang Group Holdings Co. Limited, AB Stable IX LLC, and AB Stable VIII LLC*

Gibson, Dunn &
Crutcher LLP

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all issues triable to a jury.

DATED: March 5, 2023                    GIBSON, DUNN & CRUTCHER LLP


By: */s/ Benjamin Wagner*
      Benjamin Wagner


*Attorneys for Plaintiffs Anbang Group Holdings Co. Limited, AB Stable IX LLC, and AB Stable VIII LLC*