UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANBANG GROUP HOLDINGS CO. LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HAIBIN ZHOU, et al.,<br><br>Defendants. | Case No. 23-cv-00998-VC (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 176 |

Plaintiffs move to compel the production of documents and testimony from non-party Steven Nielsen pursuant to the crime-fraud exception to the attorney-client privilege and attorney work product doctrine. ECF No. 176.

To establish that outright disclosure is warranted under the crime-fraud exception, the party seeking disclosure must establish that (1) "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme[;]" and (2) "the attorney-client communications for which production is sought are sufficiently related to and were made *in furtherance of* [the] intended, or present, continuing illegality." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007) (abrogated on other grounds) (quotation marks omitted, emphasis in original). The attorney need not have been aware that the client harbored an improper purpose; the attorney need not have participated in the criminal activity; and the communication need not have ultimately turned out to be helpful to the success of the illegal activity. *In re Grand Jury Proc.*, 87 F.3d 377, 381–82 (9th Cir. 1996); *see also Eastman v. Thompson*, 594 F. Supp. 3d 1156, 1196 (C.D. Cal. 2022).

The crime-fraud exception applies to the work product doctrine, in addition to the attorney-client privilege. *Meyer v. Mittal*, 2023 WL 4348731, at *6 (D. Or. July 5, 2023) (citing *United

*States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015)); *see also In re Outlaw Lab'ys, LP Litig.*, 2020 WL 5500220, at *3 (S.D. Cal. Sept. 11, 2020). In civil cases in the Ninth Circuit, the standard of proof for outright disclosure under the crime-fraud exception is preponderance of the evidence. *In re Napster, Inc. Copyright Litig.*, 479 F.3d at 1094–95.

      The Complaint in this case describes a yearslong effort by defendant Haibin Zhou ("Zhou") and his associates to assert bogus claims to title over at least a dozen luxury hotels belonging to Plaintiffs or their affiliates. Steven Nielsen is a patent attorney and member of the California Bar who runs his own firm, Nielsen Patents, in Larkspur, California. Nielsen was retained by Zhou in 2019 in connection with the creation of several supposed "arbitration awards"—which purported to award Zhou and his entities tens of billions of dollars and ownership over luxury hotels belonging to Plaintiffs—and the filing of court documents in Delaware and California which sought to "enforce" these purported arbitration awards. The Delaware and California cases were later dismissed as the product of fraud. The Complaint identifies Nielsen as a non-party whose legal services were allegedly used to further the fraud scheme. ECF No. 1 (Complaint) ¶¶ 39-40, 54.a, 81-149.

      The Complaint describes in detail the role of Nielsen in (1) coordinating the drafting and signing (by "arbitrators" he helped recruit) of six different false arbitration awards that purported to award tens of billions of dollars to his client's shell companies; (2) drafting and filing a false arbitration petition and default judgment; and (3) coordinating the filing and prosecution of multiple sham lawsuits in Delaware predicated on the arbitration awards he created for Zhou and a "sister state judgment" action in Alameda County, California. As stated in the Complaint, after the first Delaware attorney referred to Zhou by Nielsen became suspicious of the arbitration awards, Nielsen referred Zhou to a second Delaware attorney, whom Zhou retained. Complaint ¶¶ 99-112. After the sham lawsuits were discovered and opposed, the two Delaware attorneys withdrew. *Id*. ¶¶ 132-137. The Delaware cases were later dismissed, and the Alameda County judgment vacated, on the grounds of fraud. *Id*. ¶¶ 133-141. In dismissing the Delaware Court of Chancery case, the Chancery Court directed the Office of Disciplinary Counsel to review the conduct of the two Delaware attorneys that Nielsen helped Zhou retain, and to examine whether

Nielsen was subject to discipline in Delaware for his conduct. *Id*. ¶ 141.

As noted in the Complaint (*id*. ¶¶ 94, 140), affiliates of Plaintiffs moved in the Delaware Court of Chancery to compel the production of communications between the two Delaware attorneys and their clients. In granting the order in April 2020, the court found that Zhou's entities had waived objection by not appearing and responding in the case, and that alternatively the crime-fraud exception applied to client communications involving the two Delaware attorneys.

Plaintiffs say that Nielsen's own emails and other records obtained as a result of the Chancery Court order and discovery in this case demonstrate that Nielsen was involved in the creation and filing of sham arbitration documents and the sham litigation initiated to try to legitimize the documents. In fairness, however, they say it appears likely from the already available information and documentation that Nielsen unknowingly relied on false statements by Zhou (whom he knew as "Andy Bang"), and on a counterfeit document provided by Zhou that purported to be a secret Chinese arbitration agreement created under the Delaware Rapid Arbitration Act. (Plaintiffs say they have identified as an expert witness in this case a forensic document examiner who has examined the document and concluded that a key signature on the document was copied from another source and inserted into the agreement.)

Plaintiffs say they need not show that Nielsen intended to advance a fraud scheme, or even that he was aware of any fraudulent intent by his former client. They also say that "[n]o such allegations have been made against Nielsen in this action or in this discovery motion." ECF No. 176 at 5.

Accordingly, Plaintiffs request that, pursuant to the crime-fraud exception, the Court compel (1) outright disclosure of documents in Nielsen's possession, which are highlighted in the privilege log; and (2) deposition testimony from Nielsen regarding any such communications or activities that were in furtherance of Zhou's fraudulent scheme during the 2019-2020 time period.

Nielsen responds that he is obligated to assert the attorney-client privilege on behalf of its holder, Zhou, and to refuse to produce any privileged materials absent a waiver or court order. Similarly, he says he must refuse to testify at deposition concerning any privileged matters absent a waiver or court order. He reports that Zhou has been advised of the subpoenas served on

1  Nielsen and the pending discovery dispute and has not waived privilege. Nielsen states that he "is
2  adamant that he never submitted documentation to any Court which he knew or had reason to
3  believe contained false or otherwise misleading information, nor did he intentionally participate in
4  any activities intended to further a crime or fraud on the Court. Beyond that, and his ethical
5  obligation to assert the attorney-client privilege on behalf of Zhou, Nielsen has no further response
6  to Plaintiffs' motion." ECF No. 176 at 6.

       In ruling on discovery disputes, the Court often has to decide whether someone has carried their burden to prove that something is true, which the Court usually decides under the preponderance of the evidence standard, the one applicable here. Often these factual determinations are pretty prosaic, such as proving that a discovery response was untimely, or when documents were produced in relation to when a deposition took place, or whether the parties had an agreement on something. If both sides submit written briefing, both sides are represented by counsel, and the accusations are clear, the Court's general practice is to demand evidence to support the accusations only if the accused says: "no, that's not true." If the plaintiff says that the defendant produced 10,000 documents from a custodian's files the day before that witness's deposition, and the defendant responds with a litany of the plaintiff's alleged misdeeds, the Court will take the accusation as true and will not demand to see the production cover letter; the 10,000 documents (to know if they really came from that custodian's files); and the deposition transcript (to confirm the date of the deposition). Life is too short to demand proof of undenied accusations.

       Here, the accusations supporting the application of the crime-fraud exception come largely from the Complaint, and to a lesser degree from Plaintiffs' characterization of other evidence they possess. These accusations are not prosaic, but instead are incendiary. But which way does that cut? Wouldn't you expect Nielsen to have all the more reason to say "no, that's not true" if *these* accusations were false?

       Nielsen resists this conclusion, arguing that he "cannot respond to any of the specific allegations raised by Plaintiffs' motion because to do so would require the disclosure of attorney-client privileged information." ECF No. 176 at 5. But the Court doesn't buy it. Nielsen can certainly deny whether the actions and events Plaintiffs point to actually happened. The

4

Complaint alleges his extensive involvement in the alleged conduct, and he can say what he did or did not do without revealing privileged information. His failure to do so means that this discovery dispute lacks . . . a dispute. The Court thinks the preponderance of the evidence standard, even on an important discovery issue such as the crime-fraud exception, can be satisfied by detailed accusations by one side and a non-denial by the other side. To be clear, Nielsen denies that he knew or had reason to believe that any documentation he submitted to any court contained false or misleading information, and he contends that he did not intentionally participate in any activities intended to further a crime or fraud – but he is denying accusations Plaintiffs say they are not making, and that case law makes clear they don't need to make.

Accordingly, the Court finds that Plaintiffs have carried their burden of proof. Plaintiffs' motion to compel is **GRANTED**. The Court **ORDERS** (1) outright disclosure of the documents in Nielsen's possession that are highlighted in the privilege log; and (2) deposition testimony from Nielsen regarding any such communications or activities that were in furtherance of Zhou's fraudulent scheme during the 2019-2020 time period.

**IT IS SO ORDERED.**

Dated: January 18, 2024

THOMAS S. HIXSON
United States Magistrate Judge